EL PUEBLO DE PUERTO RICO, recurrido, *v.* GRACIANY MIRANDA MARCHAND, acusado y peticionario.

*Número:* CE-85-486        *Resuelto:* 2 de mayo de 1986

*Rafael Ortiz Carrión, Procurador General, Vanessa Ramírez, Procuradora General Auxiliar,* abogados de El Pueblo; *Miguel A. Velázquez Rivera,* abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Para el 28 de noviembre de 1982, se celebraba un juicio criminal en el Tribunal Superior, Sala de Humacao, presidido por el Juez Hon. Ángel Martínez Del Valle. Llevaba cinco (5) semanas de duración. Los abogados de la defensa —Lics. Graciany Miranda Marchand, Lorenzo Lagarde Garcés, Julio César Rivera y José A. Casillas— habían encomendado específicamente al Lic. Miguel A. Valcourt la defensa de uno de los coacusados debido a su particular conocimiento por su participación en las etapas previas del proceso.

Ese mismo día, el licenciado Valcourt tenía pendiente una vista preliminar en el Tribunal de Distrito, Sala de Humacao, ante el Juez Hon. Rafael Hernández Torres. Éste requirió infructuosamente, a través de un alguacil durante la mañana, la presencia del abogado Valcourt. Inclusive le declaró sin lugar una moción de suspensión presentada al mediodía. Posteriormente, en horas de la tarde, el Juez Hernández Torres optó por localizarlo personalmente. Lo logró en la oficina del Juez Martínez Del Valle, en ocasión de un breve receso.

Allí, el Juez Hernández Torres reafirmó su negativa a suspender y ordenó al licenciado Valcourt que compareciera inmediatamente a la vista preliminar señalada. Éste explicó al magistrado que no podía comparecer debido a que estaba ocupado ante el Tribunal Superior, y que después de las 5:00 P.M., tenía pautada, en unión a los otros abogados, una reunión con los familiares de uno de los coacusados. El juez enfatizó que las vistas habían sido antes suspendidas y que este señalamiento había sido acordado. Durante el transcurso de esa conversación, entraron a la oficina los abogados Casillas,

Miranda Marchand y Rivera. A solicitud del licenciado Valcourt, el licenciado Miranda Marchand confirmó su explicación. Finalmente, el juez en tono enérgico y preciso fijó para las 8:00 P.M. el comienzo de la vista preliminar y comenzó a retirarse de la oficina. Cuando abrió la puerta que comunica hacia la oficina de la secretaria de su compañero juez, y se aprestaba a salir, oyó que el licenciado Valcourt preguntó al abogado Miranda Marchand: "Papolo, ¿qué hago?", y éste contestó: "Mándalo pal' [*sic*] carajo, que si no lo mandas tú, lo mando yo." Cuando el Lic. César Rivera le aconsejó prudencia al licenciado Miranda Marchand, porque a su juicio corría el riesgo de ir a la cárcel, este último le contestó: "Este no tiene los cojones para meterme en la cárcel." Ante estas expresiones, (¹) el Juez Hernández Torres, ofendido y molesto, ordenó a los alguaciles que pusieran bajo su custodia al licenciado Miranda Marchand.

Oportunamente se presentó denuncia por alteración a la paz. El Tribunal de Distrito no encontró originalmente causa probable, pero en alzada, el Juez Superior, Hon. Julio Berríos sí lo hizo. (²)

El 30 de marzo de 1983, se señaló el juicio en sus méritos. Antes de comenzar el proceso, el Hon. Elidio Maldonado, juez que presidiría, se reunió en privado por aproximadamente cuarenta y cinco (45) minutos con el denunciante Juez Hernández Torres. El peticionario Miranda Marchand alega que esta reunión se celebró a instancias del Juez Maldonado, y que ni éste ni el Fiscal se lo informaron. Por su parte, el Minis-

---

(¹) El testigo de la defensa Lic. Miguel Valcourt atestó que el peticionario Miranda Marchand "se refería, obviamente, al Juez Hernández Torres, por una pregunta que yo le hice". T.E., Vol. III, pág. 216. Por otro lado, el propio peticionario aceptó haber usado ese lenguaje. Sin embargo, su posición fue al efecto de que no tuvo la intención de dirigirla al magistrado, sino que fueron promovidas en una "conversación privada, fraterna, de camaradería, de compañeros de una peregrinación angustiosa que ya nos estaba apremiando". T.E., Vol. III, pág. 234.

(²) En esa etapa ocurrió un incidente al que aludiremos más adelante.

terio Público señala que el peticionario sabía de la reunión, pues se celebró a su sugerencia para fomentar una transacción.

Luego de desfilada la prueba, el Tribunal de Distrito, por voz del Juez Maldonado, declaró culpable al acusado y lo sentenció a pagar $250 de multa. En apelación, el 17 de junio de 1985, el Tribunal Superior, Sala de San Juan, confirmó. A solicitud del licenciado Miranda Marchand, acordamos revisar.

## II

Su primer señalamiento gira en torno al debido proceso de ley. Aduce que se violó dicho precepto, pues el juez que presidió el juicio tuvo conocimiento previo y extenso del testimonio del testigo principal de cargo. El planteamiento es serio. Analicémoslo.

En *Pueblo* v. *Dones Arroyo*, 106 D.P.R. 303, 317 (1977); *Pueblo* v. *Pacheco*, 83 D.P.R. 285, 286–291 (1961), y *Pueblo* v. *Quiles*, 83 D.P.R. 63, 64–72 (1961), resolvimos que el hecho de que el juez que preside el juicio conociera con antelación la prueba documental o el testimonio de los testigos de cargo, no lo incapacita per se para ver el caso. El acusado tiene que probar en esos casos qué perjuicio ello le ha causado.

■ No obstante, en *Pueblo* v. *Toro Goyco*, 84 D.P.R. 492, 496–497 (1962), revocamos una sentencia dictada y ordenamos un nuevo juicio porque el juez que presidió el caso era la misma persona que lo había investigado, comprometiéndose así su imparcialidad, aunque fuera en apariencia. Allí citamos a *In re Murchison*, 349 U.S. 133, 136 (1955), en que el Tribunal Supremo federal, al evocar a *Tumey* v. *Ohio*, 273 U.S. 510, 532 (1927), expresó:

> Un juicio justo en un tribunal imparcial es requisito básico del debido proceso de ley. La justicia desde luego exige la ausencia de un verdadero prejuicio al juzgar los casos. Pero nuestro sistema de derecho ha tratado siempre de evi-

tar hasta la probabilidad de la injusticia. Con este propósito ninguna persona puede ser juez en su propio caso y no se le permite a nadie juzgar casos en cuyo resultado tenga interés. Tal interés no puede definirse con precisión. Deben considerarse las circunstancias y las relaciones. *Este Tribunal ha expresado, sin embargo, que "todo procedimiento que pudiera servir de posible tentación a un hombre promedio como juez . . . a no mantener un balance preciso, claro y verdadero entre el Estado y el acusado, le niega a éste el debido proceso de ley."* [Cita.] Una regla tan estricta puede en ocasiones impedir que actúen jueces que no están en verdad prejuiciados y quienes harían todo lo posible por mantener la balanza de la justicia en su fiel entre las partes litigantes. Pero para desempeñar su alta función de la manera más correcta "la justicia debe satisfacer las apariencias de la justicia." (Énfasis suplido.)

■ En el caso de autos, la realidad es que el juez que presidió el caso se reunió a solas por casi una hora con el principal testigo de cargo, un magistrado compañero suyo, sin que estuvieran presentes el acusado ni sus abogados. Independientemente de los móviles —buena fe o ánimo de transacción— esa reunión amerita que revoquemos y ordenemos la celebración de un nuevo juicio. Ello es un imperativo constitucional del debido procedimiento de ley. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, pág. 275, y la doctrina jurisprudencial antes aludida.

■ Este curso de acción se impone sin necesidad de dilucidar si en realidad la reunión se celebró a sugerencias de la defensa y si se vulneró en el ámbito deontológico el mandato del Canon XV de Ética Judicial que prohíbe al juez reunirse privadamente con un testigo de cargo. (³)

---

(³) *"El Juez no debe celebrar entrevistas privadas con las partes o sus abogados,* ni permitir comunicaciones o argumentos de los mismos que pretendan influir su actuación judicial en asuntos de su competencia o bajo su consideración *cuando los otros intereses que puedan ser afectados no estén representados ante él,* excepto en casos no contenciosos en los que deberá ser muy cauteloso." (Énfasis suplido.) 4 L.P.R.A. Ap. IV-A, C. 15.

En conclusión, procede la revocación de la sentencia y un nuevo juicio. (⁴)

## III

El anterior mandato, si bien dispone del recurso, no concluye nuestra intervención.

No podemos pasar por alto el señalamiento sobre la reunión de los jueces Hernández Torres y Maldonado antes expuesta. La misma amerita una investigación por la Oficina de Administración de Tribunales para aclarar lo sucedido. De igual modo, la Oficina del Procurador General debe investigar el comportamiento del Lic. Arturo Nieves Huertas, abogado de la defensa. Para sostener un señalamiento en instancia de que el Juez Superior, Hon. Julio Berríos no prestó adecuada atención a los procedimientos de la vista preliminar en alzada, el licenciado Nieves Huertas penetró a una oficina y rebuscó un zafacón, de donde sacó y tomó posesión de unos papeles que contenían lo escrito por el juez durante el proceso. Cánones 9 y 38 de Ética Profesional. (⁵) Por último, procede una investigación similar acerca de la conducta del licenciado

---

(⁴) Este resultado hace innecesario pronunciarnos acerca del otro error señalado, a saber, que el peticionario no alteró la paz al Juez Hernández Torres porque sus palabras no le fueron hechas a éste directamente como se imputa en la denuncia, sino comunicadas a su compañero abogado, Miguel A. Valcourt.

(⁵) Estos cánones expresan:

"*Canon 9. Conducta del abogado ante los tribunales*

"El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. *Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales.* En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

"El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa." (Énfasis suplido.) 4 L.P.R.A. Ap. IX, C. 9.

Miranda Marchand. Véase *In re Cardona Álvarez*, 116 D.P.R. 895 (1986).

Estos trámites proceden independientemente del resultado final del nuevo juicio aquí ordenado. Véase *In re Franco Soto*, 115 D.P.R. 740 (1984). La Oficina de Administración de Tribunales y el Procurador General nos rendirán en su oportunidad sus respectivos informes.

*Se dictará la correspondiente sentencia.*

---

"*Canon 38. Preservación del honor y dignidad de la profesión*

"*El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia.* En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Tal participación conlleva necesariamente asumir posiciones que puedan resultarle personalmente desagradables pero que redundan en beneficio de la profesión, tales como: denunciar valientemente, ante el foro correspondiente, todo tipo de conducta corrupta y deshonrosa de cualquier colega o funcionario judicial; aceptar sin vacilaciones cualquier reclamación contra un compañero de profesión que haya perjudicado los intereses de un cliente; poner en conocimiento de las autoridades apropiadas todo acto delictivo o de perjurio que ante él se cometiera; velar y luchar contra la admisión al ejercicio de la profesión de personas que no reúnan las condiciones morales y éticas, así como de preparación académica, que nuestra profesión presupone. Todo abogado debe estar convencido de las condiciones idóneas, morales y éticas de un aspirante al ejercicio de la profesión antes de recomendarle para su admisión al foro.

"*Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.* En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos. De igual modo, no debe permitir a sus clientes, sin importar su poder o influencia, llevar a cabo actos que tiendan a influenciar indebidamente a personas que ejercen cargos públicos o puestos privados de confianza. Lo antes indicado no impide, naturalmente, que un abogado dé a sus clientes su opinión informada y honesta sobre la interpretación o validez de una ley, orden o reglamento, que no ha sido, a su vez, interpretado o clarificado en sus disposiciones por un tribunal competente.

"Todo abogado que abandone el servicio público debe rechazar cualquier empleo o representación legal en aquellos casos particulares en relación con los cuales haya emitido juicio profesional como funcionario público." (Énfasis suplido.)

El Juez Asociado Señor Rebollo López emitió opinión concurrente y disidente. El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Ortiz se inhibieron.

—O—

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

El recurso de epígrafe tiene su origen en un incidente ocurrido en horas de la tarde del día 28 de noviembre de 1982 en una de las dependencias del Centro Judicial de Humacao, Puerto Rico, en donde estuvieron envueltos, entre otros, el Hon. Rafael Hernández Torres, Juez del Tribunal de Distrito de Puerto Rico, y el aquí peticionario, Lcdo. Graciany Miranda Marchand. En la denuncia que, como consecuencia del mismo, se radicara contra el referido letrado por el delito de alteración a la paz se alegó que éste profirió lenguaje grosero e indecoroso contra el Juez Hernández Torres con motivo de una gestión que, inexplicablemente, dicho magistrado *personalmente* realizaba con el propósito de lograr la comparecencia ante su sala en ese día, para la celebración de una vista preliminar en un caso criminal, de otro abogado que en unión al licenciado Miranda Marchand se encontraba laborando en esos mismos momentos en la defensa de dos ciudadanos acusados del delito de asesinato en primer grado.

Declarado convicto del delito de alteración a la paz y sentenciado que fuera al pago de una multa de $250, el peticionario apeló ante el Tribunal Superior de Puerto Rico. Habiendo dicho foro confirmado la sentencia apelada, compareció ante este Tribunal mediante la radicación del correspondiente recurso de *certiorari*. Expedimos el auto.

## I

No hay duda de que la "primera cuestión de derecho planteada" por el peticionario en el recurso que radicara a los efectos de que procede la revocación de la sentencia por cuanto el

magistrado que presidió la vista en su fondo del caso estuvo *reunido a solas*, en ausencia de la otra parte y su abogado, con el testigo principal de cargo por un período de tiempo considerable con anterioridad al comienzo de la misma, hace mandatorio que revoquemos la convicción decretada y devolvamos el caso para un nuevo juicio.

Es piedra angular del "debido procedimiento de ley" en nuestro ordenamiento jurídico que la inocencia o culpabilidad de todo imputado de delito deberá ser determinada por un juez o jurado imparcial. Secs. 7 y 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico. De hecho, la esencia misma de la garantía del "debido procedimiento de ley" y, por consiguiente, de lo que constituye un proceso justo e imparcial, reside precisamente en la imparcialidad y neutralidad de aquel que tiene que decidir la cuestión en controversia: en los casos criminales, la inocencia o culpabilidad del imputado de delito. *In re Murchison*, 349 U.S. 133 (1955).

En el presente caso, se asevera por el peticionario [1] que el juez que presidió la vista en su fondo en el proceso que se le celebrara estuvo reunido, antes de que comenzara el mismo, por aproximadamente cuarenta y cinco (45) minutos con el único testigo de cargo en su contra, el alegado perjudicado, Hon. Rafael Hernández Torres.

Esa situación no sólo es contraria *al espíritu* del Canon XV de los de Ética Judicial, a los efectos de que el "Juez no debe celebrar entrevistas privadas con las partes o sus abogados, ni permitir comunicaciones o argumentos de los mismos que pretendan influir su actuación judicial en asuntos de su competencia o bajo su consideración cuando los otros intereses que puedan ser afectados no estén representados ante él", sino que causa que "exista duda en el acusado de que aquél que tiene poder para privarlo de su libertad está en alguna

---

[1] Asunto que no niega el Procurador General de Puerto Rico en el alegato que radicara en el presente recurso, limitándose a expresar que el mismo no tiene la importancia que le otorga el apelante.

forma influido por otra cosa que no sea la prueba que desfila el día del juicio". *Pueblo* v. *Toro Goyco,* 84 D.P.R. 492, 495 (1962).(²)

Lo sucedido en el presente caso —*independientemente de lo inocente o inofensivo que pueda haber sido*— es una situación que no podemos aprobar ni fomentar. Los magistrados son los representantes máximos de la "justicia". No le hace ningún bien a la imagen de la misma el que situaciones como la del presente caso ocurran.

## II

El recurso de epígrafe plantea una situación que puede servir de base para el establecimiento de una norma de sana administración judicial. Un examen minucioso de los autos originales demuestra que el juez administrador de la Región Judicial de Humacao —Hon. Rafael Hernández Torres, Juez Superior— en una acción que denota extraordinario buen juicio ordenó, motu proprio, que el proceso a celebrarse fuera presidido por un juez del Tribunal de Distrito de otra región judicial y que, luego de resultar convicto el aquí peticionario, igualmente ordenó que la apelación se tramitara y resolviera ante el Tribunal Superior de Puerto Rico, Sala de San Juan.

Somos del criterio de que en todo proceso judicial, civil o criminal, en que se da la situación de que un juez del tribunal de primera instancia es o parte interesada o testigo esencial en el mismo, el magistrado que presida dicho proceso deberá ser uno que no pertenezca a la región judicial en la que se desempeña el juez que comparece como parte o testigo en el caso en particular. Como sabemos, la labor de adjudicar credibilidad y responsabilidad es una sumamente difícil. No se debe situar a un juez en la aún más delicada y angustiosa posición

---

(²) Claro está, aun cuando no se dijo específicamente en *Pueblo* v. *Toro Goyco,* 84 D.P.R. 492 (1962), no se trata de una duda en el vacío, sino de una apoyada y fundamentada en un incidente, o unos hechos específicos, que el acusado pueda demostrar a satisfacción del tribunal.

de tener que hacerlo en relación con un compañero que comparte día a día y hombro con hombro la gran responsabilidad de impartir justicia. En adición, la impresión u opinión que pueda recibir la otra parte —y el público en general— puede ser una que, no obstante ser equivocada, le hace un gran daño a la imagen de la justicia en nuestra jurisdicción.

### III

No estamos conforme, por último, con la disposición que hace el Tribunal de ordenarle, *en estos momentos*, a la Oficina del Procurador General de Puerto Rico que realice una investigación sobre la conducta de los jueces y abogados envueltos en el incidente que dio lugar al presente recurso. Entiendo que, *si es que la misma se justifica*, ello debe esperar a que la decisión que recaiga en el caso que hoy devolvemos al foro de instancia advenga final y firme. Actuar en estos momentos podría afectar y coartar los derechos del peticionario.