*In re* GRACIANY MIRANDA MARCHAND y ARTURO NIEVES HUERTAS, querellados.

*Número:* MC-83-42          *Resuelto:* 29 de marzo de 1994

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, Eliadís Orsini Zayas, Procuradora General Auxiliar,* e *Iván F. Fuster, Procurador General Auxiliar,* abogados de El Pueblo; *Julio Eduardo Torres,* abogado del Lic. Graciany Miranda Marchand; *Harold D. Vicente,* abogado del Lic. Arturo Nieves Huertas.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

## I

La querella que da lugar al caso de epígrafe, en lo referente al Lcdo. Graciany Miranda Marchand, tiene su origen en un incidente, ocurrido el 29 de noviembre de 1982,

colateral a la celebración de un juicio criminal por asesinato en primer grado y otros delitos ante el Tribunal Superior, Sala de Humacao, el cual era presidido por el Hon. Juez Ángel Martínez del Valle. En este caso, fungían como abogados de la defensa los Lcdos. Graciany Miranda Marchand, Miguel A. Valcourt Reinhardt, Lorenzo Lagarde Garcés, José A. Casillas y Julio César Rivera.

Ese mismo día 29 de noviembre, el licenciado Valcourt Reinhardt tenía señalada una vista preliminar ante el Tribunal de Distrito, Sala de Humacao. Luego de intentar infructuosamente comunicarse con el Juez Hernández Torres en horas de la mañana, magistrado ante quien estaba pautada la celebración de la vista preliminar, el licenciado Valcourt Reinhardt presentó una moción escrita mediante la cual solicitaba la suspensión de dicha vista preliminar, predicada la misma en el obvio conflicto de calendario que tenía dicho abogado ese día. Llamada la vista preliminar, la moción fue declarada no ha lugar por el Juez Hernández Torres, el cual, a través de un alguacil, requirió infructuosamente la presencia en su Sala del licenciado Valcourt Reinhardt. El señalamiento se mantuvo pendiente.

En horas de la tarde del mismo día, el Juez Hernández Torres se personó a la oficina del Juez Martínez del Valle. En ese momento, el Juez Martínez del Valle no se encontraba en su oficina, tampoco había en ella ninguna otra persona. Estando aún el Juez Hernández Torres en la oficina del Juez Martínez del Valle, llegó a dicho lugar el Lcdo. Miguel A. Valcourt Reinhardt. Al encontrar allí al Juez Hernández Torres, el licenciado Valcourt Reinhardt procedió a explicarle a éste las razones por las cuales no podía asistir ese día a la vista preliminar señalada en su Sala y volvió a solicitar, verbalmente, del Juez Hernández Torres, la suspensión de la misma. El referido magistrado reiteró su negativa a suspender y ordenó al licenciado Valcourt Reinhardt que compareciera inmediatamente a la vista preliminar señalada. Le indicó que "existía un com-

promiso" y que "había que ver esa vista ese día", a la hora que fuera.

Mientras se suscitaba el referido diálogo, entraron a la oficina del Juez Martínez del Valle los Lcdos. Graciany Miranda Marchand, José Antonio Casillas y Julio César Rivera. El licenciado Valcourt Reinhardt procedió, entonces, a dirigirse al licenciado Miranda Marchand, informándole de la decisión del Juez Hernández Torres y solicitó del licenciado Miranda Marchand que le confirmara al magistrado el hecho de que, después de las 5:00 p.m. de ese día, el licenciado Valcourt tenía pautada, junto a los otros abogados allí presentes, una reunión con los familiares de uno de los coacusados en el caso de asesinato que estaban viendo en la Sala del Juez Martínez del Valle. El Juez Hernández Torres señaló que la vista preliminar ya había sido suspendida anteriormente, que el señalamiento para ese día había sido acordado por las partes, y, *en tono enérgico*, expresó que no iba a suspender dicha vista y que la misma se iba a ver a las 8:00 p.m. o a cualquier otra hora de ese día.

Dicho esto, el magistrado comenzó a retirarse de la oficina del Juez Martínez del Valle. Al abrir la puerta que lleva a la oficina de la secretaria, escuchó el Juez Hernández Torres cuando el licenciado Valcourt le preguntó al licenciado Miranda Marchand: " 'Papolo, ¿qué hago?', a lo que éste contestó: 'Mándalo pal' carajo, que si no lo mandas tú, lo mando yo'[; añadiendo luego:] 'Este no tiene los cojones para meterme en la cárcel'." *Pueblo v. Miranda Marchand*, 117 D.P.R. 303, 305 (1986).([1])

---

[1] A raíz del incidente narrado, el Juez Hernández Torres ordenó a los alguaciles que pusieran bajo su custodia al licenciado Miranda Marchand. Oportunamente presentó denuncia contra éste por alteración a la paz. El licenciado Miranda Marchand fue absuelto del delito imputado, luego de suscitarse varios incidentes procesales, que incluyeron la radicación y expedición por parte de este Tribunal del recurso de *certiorari* que dio lugar a la publicación de la Opinión del Tribunal en el caso de *Pueblo v. Miranda Marchand*, 117 D.P.R. 303 (1986).

*El licenciado Miranda Marchand admitió, bajo juramento, ante la Oficina del Procurador General, haber hecho las expresiones señaladas en el caso de Pueblo v.*

El licenciado Miranda Marchand —*quien acepta haber hecho estas expresiones*— señala que hizo las mismas estando los abogados solos en el recinto, "[como parte de una] 'comunicación privada, fraterna, de camaradería, de compañeros de una peregrinación angustiosa' ". *Pueblo v. Miranda Marchand*, ante, pág. 305 esc. 1. El Juez Rafael Hernández Torres alega que, en adición a lo admitido por el licenciado Miranda Marchand, éste, dirigiéndose a su persona, también dijo: "Mire, váyase pal' carajo";(²) expresiones que el licenciado Miranda Marchand vehementemente niega haber hecho. Los licenciado Valcourt Reinhardt y Rivera Velázquez igualmente no dicen haber escuchado las mismas. *Resolvemos*.

■ El Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone en lo pertinente:

> El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales.

■ Las palabras utilizadas por el licenciado Miranda Marchand ciertamente constituyen lenguaje reñido con la dignidad y respeto a los tribunales, así como poco ejemplarizante e inadecuado al ejercicio de la abogacía.(³) Indepen-

---

*Miranda Marchand*, ante. Los Lcdos. Miguel A. Valcourt Reinhardt y Julio César Rivera Velázquez, mediante declaraciones juradas prestadas ante la misma oficina el 21 de octubre y el 16 de noviembre de 1987, respectivamente, corroboran el contenido de las expresiones admitidas por el licenciado Miranda Marchand. Por su parte, el Lcdo. José A. Casillas expresó, en declaración jurada ante la misma Oficina el 21 de diciembre de 1987, que no podía recordar el contenido de las expresiones vertidas, pero que tanto el licenciado Miranda Marchand, como el Juez Hernández Torres profirieron palabras "que no eran propias para decirse en ninguna conversación entre dos seres humanos".

(²) Esta afirmación del Juez Hernández Torres surge de la declaración que prestara bajo juramento el 16 de octubre de 1987.

(³) En otro contexto hemos definido el término "palabras ofensivas" como aquellas que dentro del significado que le atribuye la idiosincrasia general de nuestro pueblo por su propia naturaleza, más que de carácter de molestia, resultan ofensivas, hirientes e irritantes, capaces de provocar una respuesta violenta o de riña y, por consiguiente, una alteración a la paz. *Pueblo v. Caro González*, 110 D.P.R. 518, 530

dientemente del hecho de que el magistrado en controversia estuviera, o no, en la oficina en que se hicieron dichas expresiones e independientemente del hecho de que el licenciado Miranda Marchand estuviera, o no, consciente de la presencia del juez, al expresarse en la forma en que lo hizo el licenciado Miranda Marchand observó una actitud desdeñosa hacia el Juez Hernández Torres y actuó en detrimento de la dignidad, el prestigio y el buen nombre del cargo que ocupaba dicho magistrado. Ningún abogado está justificado en llegar a tales extremos por el hecho de sentirse molesto por una actuación o expresión de un juez. Véase *In re Andréu Ribas*, 81 D.P.R. 90 (1959).[4] Tal comportamiento no está acorde con los principios de ética profesional que pautan la conducta de los abogados.

Indudablemente, el hecho de haber realizado dichas expresiones en circunstancias en que las mismas podían ser oídas, como en efecto aparentemente lo fueron, por el propio Juez Hernández Torres, denota imprudencia y falta de cuidado por parte del licenciado Miranda Marchand. Este comportamiento, *de ordinario*, infringe el deber de responsabilidad que nuestros principios deontológicos le imponen a los miembros de la profesión de abogado, conforme a los cuales principios, todo abogado tiene la obligación de conducirse de forma tal que se preserve, *en todo momento*, la dignidad del tribunal.

Ahora bien, el análisis más objetivo de la prueba documental sometida —consistente en las declaraciones juradas de todas las personas presentes durante el incidente— demuestra, a nuestro juicio, que al hacer las ya referidas manifestaciones, el licenciado Miranda Marchand *no tuvo* la intención de dirigirse directamente al Hon. Juez Hernández Torres, *como tampoco tuvo* la intención de que el

---

(1980).

[4] Aunque este caso fue resuelto antes de la aprobación de los cánones de ética profesional vigentes, en él se aplica el mismo principio deontológico de respeto al tribunal incorporado en el Cánon 9 del Código de Ética Profesional vigente, 4 L.P.R.A. Ap. IX.

Juez Hernández Torres las escuchara; *siendo estas escuchadas de forma incidental por dicho magistrado*. Dicho de otra forma, no se trata de un acto intencional de expresiones *dirigidas directamente* a un magistrado, sino que de expresiones poco pensadas, hechas como parte de una *conversación privada* entre amigos o compañeros abogados, *referentes a* un magistrado.

Tomamos nota, en adición del hecho de que, luego del incidente en el que este abogado hizo las referidas expresiones, el cual resultó ser de corta duración, el licenciado Miranda Marchand fue detenido por los alguaciles del tribunal a solicitud del Juez Hernández Torres. Durante todo este tiempo, el mencionado abogado observó una conducta sosegada y ecuánime, demostrativa del mayor respeto hacia la autoridad judicial y los tribunales. Esto nos hace pensar que las breves e infortunadas expresiones, que dieron lugar a su detención, *fueron el resultado de un impulso momentáneo e impensado*, que de ninguna manera constituye un patrón de conducta irrespetuosa de su parte hacia la autoridad judicial.

Finalmente, debemos señalar que si bien resulta cierto que el lenguaje utilizado por el licenciado Miranda Marchand fue vulgar e inapropiado, dada la circunstancia de estrecha amistad que existe entre el licenciado Miranda Marchand y el licenciado Valcourt Reinhardt, el mismo puede pasar como expresiones coloquiales o lenguaje de la conversación espontánea entre amigos. En fin, *no* se trata de manifestaciones hechas en corte abierta *ni* de escritos dirigidos y sometidos ante el tribunal, cuyo contenido es derogatorio, hiriente u ofensivo; por el contrario, dichas manifestaciones fueron hechas, repetimos, aun cuando en una dependencia del tribunal, en una conversación entre compañeros abogados, en condiciones en que se suponía las mismas no fueran escuchadas por la persona a las cuales se referían las mismas.

En vista a ello, y no obstante la indeseabilidad de dichas manifestaciones, somos del criterio que únicamente resulta procedente, como sanción, una *simple amonestación* al licenciado Miranda Marchand, y la advertencia a éste de que en el futuro deberá abstenerse de hacer expresiones similares.

## II

Mediante Resolución de 3 de abril de 1987, ordenamos al Procurador General investigar la conducta profesional del Lcdo. Arturo Nieves Huertas, en relación a un incidente ocurrido mientras ostentaba la defensa del licenciado Miranda Marchand en el caso criminal, por alteración a la paz, que se llevó contra este último a raíz de las expresiones que el licenciado Miranda Marchand hiciera sobre el Juez Hernández Torres. Dicho incidente fue resumido en la opinión del Tribunal en *Pueblo v. Miranda Marchand*, ante, pág. 308, a saber:

> De igual modo, la Oficina del Procurador General debe investigar el comportamiento del Lic. Arturo Nieves Huertas, abogado de la defensa. Para sostener un señalamiento en instancia de que el Juez Superior, Hon. Julio Berríos no prestó adecuada atención a los procedimientos de la vista preliminar en alzada, *el licenciado Nieves Huertas penetró a una oficina y rebuscó un zafacón, de donde sacó y tomó posesión de unos papeles que contenían lo escrito por el juez durante el proceso.* (Énfasis suplido.)

Habiendo comparecido el señor Procurador General y el querellado licenciado Nieves Huertas, procedemos a resolver.

El licenciado Nieves Huertas señala en su alegato que su conducta, *la cual admite ocurrió,* fue una respetuosa que no violó de modo alguno los cánones de ética profesional y que respondió a que se encontró en una situación, o estado de emergencia o necesidad, actuando en la forma

más razonable y responsable, y de conformidad con su deber de defender los intereses de su cliente en forma diligente, adecuada y responsable, según dispone el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Alega que el Hon. Juez Julio Berríos, quien presidía la vista preliminar en alzada contra su representado, no había prestado atención y había estado distraído, ausente y desinteresado en los procedimientos, pues durante los mismos se dedicó a hacer unos dibujos o garabatos en unas hojas de papel. Preocupado por tal situación, alega haber salido a buscar al Juez Berríos luego de concluida la vista en que se encontró causa probable y, que estando legítimamente en donde pensó que podía encontrar al juez, vió a plena vista, en un zafacón, una bola de papel que entendió constituía evidencia importante para apoyar la moción de reconsideración que había querido someter al Juez Berríos.

■ Ciertamente, todo abogado tiene el deber de representar los intereses de su cliente en forma diligente, adecuada y responsable. Canon 18 del Código de Ética Profesional, ante. Sin embargo, el referido Canon 18, en lo pertinente, dispone en su párrafo tercero:

> Este deber de desempeñarse en forma capaz y diligente *no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente.* La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no solo la letra de ésta, sino el espíritu y los propósitos que la informan. (Énfasis suplido.)

■ El deber del abogado de defender en forma diligente los intereses de su cliente, debe ejercerse de forma tal que no resulte en una violación a las disposiciones que reglamentan la conducta del abogado para con los tribunales y que imponen, a los primeros, el deber de observar una conducta del mayor respeto a los tribunales. Canon 9 del

Código de Ética Profesional, ante. A pesar de que la oficina de un juez constituye parte integrante del recinto del tribunal, ésta es también un lugar privado al cual no debe entrar ningún abogado sin previa autorización. Menos aún debe un abogado tomar, sin autorización para ello, un documento, que a pesar de haber sido descartado dentro de un zafacón, está en la oficina de un magistrado. Las acciones del licenciado Nieves Huertas, al adentrarse en las oficinas del juez sin haber recibido para ello autorización, podría, de ordinario, constituir una conducta impropia contraria a las disposiciones de los Cánones 9 y 18 del Código de Ética Profesional, ante.

■ Tomamos conocimiento judicial, sin embargo, de la práctica existente, en muchos de los tribunales de instancia, de la libre entrada y salida de los abogados en las oficinas privadas de los jueces.[5] Independientemente del hecho de que consideramos que la misma es una práctica que no es correcta, y que no debe ser permitida, no podemos ignorar el hecho de la existencia de la misma. Un examen de los autos demuestra que eso fue lo ocurrido en el presente caso; esto es, *no* hubo intención maliciosa alguna de parte del licenciado Nieves Huertas al entrar a la oficina en controversia. Por otro lado, si bien es cierto que el licenciado Nieves Huertas no tenía el derecho de apropiarse de ninguno de los objetos allí existentes, tampoco podemos ignorar el hecho de que el papel en controversia había sido descartado como basura, encontrándose en el zafacón de dicha oficina; hecho que no está en controversia. Ello, obviamente, constituye un atenuante. Entendemos procedente, al igual que en la situación del licenciado Miranda Marchand, *amonestar* al licenciado Nieves Huertas por lo ocurrido y apercibirlo contra futura conducta similar.

---

[5] La mejor evidencia de la existencia de dicha práctica a nivel de instancia lo constituye, precisamente, lo ocurrido en la oficina del Juez Martínez del Valle, incidente al que hicimos referencia anteriormente.

590

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señora Naveira de Rodón y Señores Negrón García y Alonso Alonso no intervinieron.