*612 TEXTO COMPLETO DE LA SENTENCIA
Nos corresponde determinar si las expresiones y el comportamiento de una Juez durante una conferencia con las partes comprometen su imparcialidad o provocan una apariencia de parcialidad de tal forma que debe ser recusada y no debe presidir el caso. Veamos los hechos.
I
El Ledo. Carlos Romero Barceló presentó una reclamación judicial contra el señor Elliot Giraud Padró por servicios profesionales como corredor de bienes raíces. Se reclama el pago de una comisión de un porcentaje de 2 (2%) por gestiones profesionales para posibilitar la venta de una empresa comercial (Empresas Yaucono). La comisión reclamada equivale a $1,060,000.
El caso fue asignado al Salón de Sesiones 503, que preside la Hon. Concepción del Pilar Iguartúa Pontón, en la Región Judicial de Bayamón. Durante el trámite del caso, la Juez concedió una orden de embargo en aseguramiento de sentencia, luego de escuchar el testimonio de la parte demandante, el Ledo. Romero Barceló. El testimonio se relacionó con los servicios que, alega, prestó como corredor de bienes raíces y el contrato entre las partes. Cabe señalar que la orden de embargo concedida por el Tribunal de Instancia, posteriormente fue revocada por el Tribunal de Apelaciones (KLCE-2006-00982) porque no se notificó debidamente al demandado la vista sobre el embargo y al demandante no se le requirió la prestación de una fianza.
El caso continuó su trámite en el Tribunal de Primera Instancia y se pautó una conferencia con antelación al juicio para el 25 de mayo de 2007. Durante la discusión del Informe de la Conferencia, la Juez vertió en el récord, mientras cuestionaba a los abogados del señor Giraud, varias expresiones que aludían al conocimiento del testimonio del demandante escuchado durante la audiencia relacionada a la solicitud de embargo.
El señor Giraud presentó una solicitud de recusación contra la Juez y argumentó que los comentarios vertidos durante la conferencia reflejan prejuicio o parcialidad en su contra, lo cual impedía un proceso justo e imparcial.
La moción de recusación fue presentada el 1 de junio de 2007 y se asignó a otro Juez. El Juez asignado resolvió denegar la solicitud mediante resolución de 10 de marzo de 2008, luego de evaluar el expediente, que incluyó una transcripción de la audiencia.
Inconforme con la decisión, se presentó un recurso de certiorari el 27 de mayo de 2008 en el cual se alegó como único error que el Tribunal de Primera Instancia denegó la solicitud de recusación.
Compareció la parte recurrida a oponerse a la solicitud. Teniendo el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
El Juez que evaluó la moción de recusación ordenó a las partes presentar una transcripción de lo ocurrido durante la conferencia con antelación al juicio. Al resolver la recusación, el Juez actuó, luego de considerar la transcripción, sin que se presentara alguna otra prueba.
*613 Por lo tanto, nuestra revisión ocurre en una de las circunstancias en que estamos en igualdad de condiciones que el Tribunal de Primera Instancia para evaluar y apreciar la pmeba, puesto que la decisión del Juez ocurrió a base de su evaluación de la transcripción y el expediente sin que se presentara otro testimonio. Cruz, y otro v. Sierra Maya y otros, 133 D.P.R. 871, 874 (1993); Ortiz v. Viera, 59 D.P.R. 358 (1941).
El expediente evaluado por el Tribunal de Primera Instancia incluyó una transcripción de lo ocurrido durante la conferencia con antelación al juicio. El señor Giraud alude a varias expresiones de la Juez que él interpreta como reflejo de prejuicio o parcialidad de tal grado que debe provocar su inhibición.
La lectura de la transcripción refleja dos etapas que debemos separar. En primer lugar, las partes discutieron aspectos importantes sobre el descubrimiento de pmeba pendiente, se pautaron deposiciones, se marcó la pmeba anunciada y se señaló fecha para el juicio. Estos asuntos son parte esencial de la preparación de un caso, y un Juez, con entera propiedad y corrección, puede discutirlos con las partes durante la conferencia con antelación al juicio.
De hecho, lo correcto es que el Juez estudie el informe presentado por las partes y discuta todo lo necesario para preparar el caso. El proceso de la conferencia con antelación al juicio requiere, como regla general, que las partes y el Juez estudien y discutan con rigor jurídico su contenido para pautar el juicio y lograr la disposición final del caso.
Sin embargo, al examinar la transcripción, nos surge la interrogante de si el caso realmente estaba listo para celebrar una conferencia con antelación al juicio. Nótese que la Juez pautó más de 10 deposiciones a testigos (págs. 31-38), se discutió —sin resolverla— una controversia sobre si el perito del demandante, señor Alberto Hernández, tenía que rendir un informe pericial previo a su deposición (págs. 38-43) y se intentó marcar las piezas documentales (págs. 12-31). También estaba pendiente una moción de desestimación del demandado. Es razonable anticipar que luego de que las partes realicen más de 10 deposiciones y completen el descubrimiento de pmeba, será necesario realizar una nueva conferencia con antelación al juicio o revisar el informe preparado para incorporar todos los asuntos que surjan de las nuevas deposiciones y el descubrimiento autorizado. La Juez actuó correctamente al pautar, los eventos preparatorios de juicio. Lo que nos causa preocupación es que los asuntos de deposiciones y descubrimiento de pmeba autorizados son de tal envergadura que provocarán cambios importantes en el informe de conferencia con antelación al juicio, los cuales deberán ser atendidos antes del juicio.
III
El otro asunto discutido en la conferencia desembocó en la moción de recusación que tenemos que adjudicar. La Juez preguntó a las partes sobre la posibilidad de una transacción. El demandado expresó que formuló una oferta de transacción para evitar el pleito y en consideración a que, antes de la demanda, las partes en controversia eran amigos. (Págs. 44-47)
A partir de ese momento, se desarrolló un diálogo y discusión que constituye una segunda etapa del pretrial. La Juez preguntó a las partes sobre conversaciones para lograr una transacción y comentó la teoría del caso. (Págs. 87-88). El peticionario aclaró a la Juez su teoría del caso, argumentó sobre una moción de desestimación por falta de parte indispensable y explicó las razones por las cuales no debía responder civilmente por la demanda. (Págs. 88-94). El demandante, igualmente, describió su teoría del caso. (Págs. 95-96).
Luego se desarrolló un diálogo activo entre la Juez y el demandado. La Juez repetía una y otra vez que había escuchado el testimonio del Ledo. Romero Barceló (prestado durante la vista relacionada con la petición de embargo) y que éste reclamaba el pago por sus servicios y mediación para que se realizara el contrato de compraventa de las Empresas Yaucono. A la misma Vez, cuestionaba la razonabilidad de la teoría del demandado.
*614 Como la base invocada para establecer el prejuicio y parcialidad son las declaraciones de la Juez para el record, es necesario examinar la transcripción.
Efectivamente, la transcripción refleja diversos incidentes entre la Juez y el abogado del señor Giraud que debemos repasar para disponer del recurso. La Juez se quejó de que el demandado Giraud nunca había comparecido ante ella, ni siquiera en la ocasión en que celebró la vista. (Pág. 9). El Ledo. Mariani reclamó que su cliente no compareció a la vista del embargo porque no había sido emplazado y por eso, eventualmente, se revocó la orden dictada.
Luego, la Juez discutió las piezas documentales mencionadas en el Informe de Pretrial y preguntó si podían ser estipuladas. La Juez autorizó incluir nuevos testigos, peritos, se pautó la deposición a éstos y se ordenó el descubrimiento de prueba pendiente.
La Juez aludió a la conveniencia de que el demandado aumentara su oferta de transacción y caracterizó su teoría del caso de la siguiente forma (págs. 47-48):

“HONORABLE JUEZ

Lo que ustedes deben estar... verdad, subir un poquito porque... verdad, no sé. Ustedes tienen que pensar todo lo que va a costar todo lo que usted va a hacer de deposiciones, casi a $500 por deposición, que son como diez personas que usted va a deponer, a lo mejor contrata otra persona. ¿A cuánto va a llegar esto? La alegación de su cliente es que firmó un papel y no sabía ni lo que firmaba ¿verdad? Yo leí la teoría, que él no sabía lo que firmaba, que alegadamente lo engañaron, dolo. Esa es la teoría de la parte demandante. Pero esa teoría de la parte demandante va encaminada a si esta persona es un empresario que sabe cuando negocia las personas. Porque no solamente, el tribunal cuando va a evaluar el caso, solamente va a ver el papel, va a ver cuál es la preparación de esa persona. Si esa persona es el que me vende las papas aquí al frente o es una persona que es un comerciante, que es un empresario, que podríamos decir al tribunal que lo cogieron de bobo, o fue dolo o engaño. Y eso tiene que ir, no solamente a la carta, tiene que ir con las experiencias del hombre. Y a lo mejor, no quiero decir, a lo mejor el señor que venda ahí papas sabe más que su cliente. Pero un negocio de papas, con este tronco de negocio que compraron de 53 millones de pesos, tiene que tener otra capacidad, entiendo yo, no sé. Yo lo evaluaré.

LCDO. MARIANI FRANCO

Pero esa no es la teoría, Juez, únicamente, eso es parte.

HONORABLE JUEZ

Pero la teoría, entre otras cosas, es... "mire, yo no leí ese documento, yo no lo leí, me engañaron, yo no sabía lo que estaba firmando", esa es la primera parte de la teoría de la parte demandada. La otra parte es que el señor Romero Barceló no hizo nada. Esa es la otra parte, más o menos, que...

LCDO. MARIANI FRANCO

La teoría, Su Señoría, es que...

HONORABLE JUEZ

Sí, más o menos, que no hizo nada, que quien hizo fue su cliente. Eso es lo que dice, más o menos, la teoría.

*615
LCDO. MARIANI FRANCO

Pero la teoría va por dos vías. Una es que en la firma del contrato se da el dolo.

CAMBIO CASSETTE

LCDO. MARIANI FRANCO

Y ese tipo de contrato usted lo verá, lo analizará, y verá que nosotros tenemos una contención legal de que ese contrato simplemente es insuficiente en la ley que hicimos, la ley que regula el negocio de la parte de corretaje que no se solucione. La parte demandante tiene su teoría sobre eso, issues legales. Dos: una vez firmado el contrato esa transacción no se da, Su Señoría, hay un tiempo substancial en que se da. El contrato no tiene fecha de vencimiento, como señala la ley, como usualmente tienen los contratos de corretaje. Tres: la entidad que compra, que está marcado como exhibit ya, es Intercojfee, no es mi cliente. El licenciado Romero Barceló dice que él no sabía, así es que se hacen esos negocios millonarios. Pero entonces porqué no le dan su contrato, siendo abogado, que aclare las cláusulas, que diga "Elliot Giraud y la corporación sucesora de interés", no lo hace, no hace nada de eso. Entonces, ahora pretende que don Elliot Giraud, que no es dueño de esta entidad de 55 millones de dólares le pague la comisión. El dueño es una corporación, inscrita, con velo corporativo, con protección corporativa, este tribunal no tiene ante su jurisdicción esa entidad.

HONORABLE JUEZ

Unjú.

LCDO. MARIANI FRANCO

Y se pretende hacerlo pagar, no sé bajo qué teoría. Será una teoría de que era garantizador de las obligaciones de Intercojfee; pero es que Intercojfee no está aquí. Y entonces, si era una teoría de fraude de acreedores, si Intercojfe se creó para impedir que Romero cobrara...

El abogado del señor Giraud insistió en que la empresa que intervino en la compra se identifica como Intercojfee, de la cual el señor Giraud es presidente y accionista principal,, pero uno y otro son distintas personas, y la comisión que se reclama no puede pagarla una persona natural que no compró las empresas. El abogado del demandante explicó su teoría y, entre otras cosas, expresó que el señor Giraud es un comerciante experimentado y se obligó en un contrato escrito que ahora no quiere cumplir, (págs. 51-53).

La Juez volvió a intervenir y expresó lo siguiente (Págs. 53-54):

HONORABLE JUEZ

Okay. Licenciado, puede ser que al final, verdad, yo tampoco lo estoy decidiendo, que al final se creara esa corporación para comprarle esto a la familia Jiménez. Pero lo importante es si las gestiones que hizo... porque es que ya, acuérdese, que yo oí ya al licenciado Carlos Romero Barceló, ya yo lo oí en la vista. (Énfasis suplido).

LCDO. MARIANI FRANCO

Pero no tuvimos oportunidad de hacerlo nosotros...

*616
HONORABLE JUEZ .

Sí, pero yo lo oí ya, ya yo lo oí.

LCDO. MARIANI FRANCO

Pero no sé que significa...

HONORABLE JUEZ

Pero lo que yo quiero decir es que lo importante aquí es, licenciado, porque es de lo que él habló, de las gestiones que él hizo para que este señor comprara a la familia del Café Yaucano. Las gestiones, según él testificó aquí porque le puedo decir que él testificó... que las gestiones que él hizo fueron las que dieron lugar a que, por sus relaciones, le vendieran y el banco prestara ese dinero. Estas son unas gestiones que él hizo, ¿Para quién?, para el señor Girau.

LCDO. MARIANI FRANCO

Eso dice él.

HONORABLE JUEZ

Bueno, eso es lo que él dice. Pero tomando como cierto eso, él ya lo testificó bajo juramente y no sé si lo habrá testificado en la deposición, todas las gestiones que él hizo iban encaminadas a qué, a que el señor Giraud pudiera comprarle a la familia Jiménez todas las cosas de este café Yaucano. Y otras cosas más que compraron, me acuerdo que no era solamente el Café Yaucono, entiendo que fue todo, lo que ellos tenían lo compraron. Si eso fue así, el tribunal entiende... si fue así, porque usted va a tener que decirse que no fue así, que él tiene derecho a una comisión. Porque él lo hizo para que el señor Giraud, a través de la corporación si la creó después, le hicieran el préstamo. Yo no sé si es así, le digo que yo oí, porque yo lo oí. ”

La reiterada expresión de la Juez de que escuchó el testimonio del demandante y el repetir con énfasis "es que ya yo lo oí", eran una forma clara de refutar al demandado a base del conocimiento que tenía la Juez sobre el testimonio del demandante. El mensaje de la Juez reflejaba que lo importante era que el demandante había hecho las gestiones para que se comprara a la familia Jiménez la empresa de Café Yaucono. Como si no fuera suficiente la insistencia de la Juez, llegó a expresar que al tomar como cierta la declaración del demandante, porque lo hizo bajo juramento, las gestiones iban encaminadas a que el señor Giraud comprara. La Juez, entonces, añadió que como ya había oído eso, el demandado "el Tribunal entiende... sifué así, porque usted va a tener que decirse (sic) que no fue así...". La expresión de la Juez sugería al demandado que tenía que rebatirlas. (Pág. 55).
La Juez y el abogado del demandado argumentaron sobre lo ocurrido en la vista de embargo. El abogado alegó que la licenciada que compareció a la vista no conocía el caso y no estaba preparada. La Juez alegó que debió estar preparada. (Págs. 55-59).
La discusión trabada se refiere al testimonio prestado por el demandante en la audiencia que tuvo como resultado la orden de embargo antes mencionado y que luego fue revocada por el Tribunal de Apelaciones porque no se cumplió con los requisitos de la ley.
La transcripción refleja inmediatamente después otro intercambio que, por su importancia, debemos reproducir. (Págs. 59-60).

*617
“HONORABLE JUEZ

No, no, licenciado...

LCDO. MARIANI FRANCO

Lo que le pedimos a la Juez es que con esa experiencia de tantos años que sabemos que Su Señoría tiene, que le dé la oportunidad al señor Giraud, con la mente abierta...

HONORABLE JUEZ

Pero si la tengo abierta, pero si es que el señor Giraud era el que no venía.

LCDO. MARIANI FRANCO

Por eso, es que, Su Señoría, en el récord usted me ha indicado hoy, Su Señoría, y tengo que señalarlo así, me ha indicado dos cosas que nos preocupan verdaderamente

HONORABLE JUEZ

Pues pida la inhibición, conmigo no hay problema. Bajo juramento. Conmigo no hay problema. Dos cosas he dicho, la primera vez que usted viene, no había venido.

LCDO. MARIANI FRANCO

Eso no es lo que íbamos a decir.

HONORABLE JUEZ

Y que este expediente está lleno de que si cumple, y que no cumple, que si señalan vista, que si señalan deposiciones, que suspende. Esto está lleno de eso, licenciado. Eso está lleno de eso; este expediente está lleno de eso.

LCDO. MARIANI FRANCO

Eso no es lo que nos preocupa, Juez, el asunto procesal. Lo que nos preocupó, Su Señoría, y con el mayor de los respetos, el usted indicar que nosotros tenemos que rebatir una prueba que ni siquiera ha desfilado en juicio. Y que el peso de la prueba no es nuestra, es una prueba del demandante en este caso. (Enfasis nuestro).

HONORABLE JUEZ

Pero, licenciado, ¿dónde yo he dicho eso?

LCDO. PEÑAGARÍCANO

Que conste que eso no lo ha dicho esta Juez.

*618
HONORABLE JUEZ

Es que yo no he dicho eso.

LODO. PEÑAGARÍCANO

Lo que está haciendo es que le está... él le está poniendo palabras en su boca. Y eso no se hace.

HONORABLE JUEZ

Mire, licenciado, yo no he dicho nada, yo estoy evaluando lo que ha pasado aquí. Y si usted no está de acuerdo conmigo, mire, radique una moción de inhibición bajo juramento, se la pasamos a otro Juez, él decide, y si yo lo tengo que ver lo veo, porque yo no tengo aquí animosidades con nadie, ni tengo que ver nada aquí con nadie, ni conozco aquí a la gente. A ninguno de los dos conozco. Lo antes dispuesto, constituye la determinación del tribunal en cuanto a los planteamientos sometidos ante su consideración. ”

La moción de recusación se ampara en que las expresiones y la conducta de la Juez la inhabilitan para continuar a cargo del caso.
IV
La actitud y expresiones de la Juez, según refleja la transcripción, comprometieron irremediablemente su imparcialidad o, al menos, crearon una apariencia de parcialidad que aconseja que no intervenga en la adjudicación del caso.
La Juez, una y otra vez, expresó su posición a base de una versión de hechos presentada por el demandante durante la audiencia del embargo. La descripción de la controversia y la teoría del caso que hizo la Juez podían ser interpretadas por quienes la escuchaban que concedían un gran peso y credibilidad al testimonio del demandante previamente escuchado y colocó sobre la parte demandada la impresión de que a ésta correspondía rebatir tales alegaciones.
Más aún, cuando el abogado de la demandada quiso señalar a la Juez su preocupación por el peso de la prueba que colocaba en su contra, ésta le respondió "pues pida la inhibición...".
La imparcialidad del Juez es un supuesto necesario para que las partes litigantes logren un juicio justo. Pueblo v. Toro Goyco, 84 D.P.R. 492, 499 (1962). Es obligación de los Jueces proteger la confianza de la ciudadanía en la justicia. In re: González Acevedo, 2005 J.T.S. 92, 165 D.P.R. _ (2005).
La intervención del Juez en el proceso debe ser respetuosa y cuidadosa en sus comentarios sobre los hechos o el derecho de manera que evite hasta la apariencia de impropiedad y conflicto. El Canon 11 de Etica Profesional, 4 L.P.R.A. Ap. IV-B y la Regla 43 (C)(D) de Evidencia, 32 L.P.R.A. Ap. IV, reconocen discreción al Juez para intervenir en el proceso, pero le advierten que su participación no puede comprometer su imparcialidad y no puede parecer que favorece a alguna de las partes. Las leyes que reglamentan el proceso de inhibición tienen como propósito otorgar a cada litigante un juicio imparcial y justo ante un juez desinteresado. Rafael Hernández Colón, Derecho Procesal Civil, Lexis Nexis, 4ta' Edición, pág. 243.
En estricto orden procesal, compete a la parte que alega el prejuicio del Juez el peso de la prueba para demostrarlo. Ello, porque al Juez le asiste una presunción de imparcialidad y rectitud. Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges, 2ed. California, Bank & Jordan Publishing Co., 2007, págs. 548-549.
*619 Al determinar si existe prejuicio personal del Juez, resulta necesario realizar un análisis de la totalidad de las circunstancias a la luz de la prueba presentada. Lind, et al v. Cruz, 160 D.P.R. 485, 491 (2003); Ruiz v. Pepsico P.R., Inc., 148 D.P.R. 586, 589 (1999). Para realizar tal examen es necesario utilizar la norma objetiva del buen padre de familia, no desde la perspectiva del Juez ni de los litigantes. Lind. v. Cruz, supra, pág. 491.
Los Jueces no sólo deben ser imparciales, sino que deben reflejarlo en su comportamiento y conducta durante el manejo de los casos. El tema de la apariencia de imparcialidad es una norma enraizada en importantes principios éticos aceptados por el Tribunal Supremo. Véase Santiago v. Superintendente de la Policía, 112 D.P.R. 205, 212 (1982), Voto de Inhibición del Juez Asociado Negrón García. El Juez tiene que ser imparcial y su conducta debe estar libre de toda apariencia de que es susceptible de actuar a base de influencias. Canon 8 de Ética Judicial, 4 L.P.R.A. Ap. IV-B.
La norma vigente y sancionada por el Tribunal Supremo de Puerto Rico requiere que el Juez ante quien se ventila un proceso judicial debe evitar hasta la más leve apariencia de parcialidad. Pueblo v. Robles González, 125 D.P.R. 750, 766 (1990) (nota al calce 7); Pueblo v. Miranda Marchand, 117 D.P.R. 303, 306 (1986); Rivera v. Cortes, 71 D.P.R. 953, 963 (1950).
El Canon 20 de Ética Judicial ordena al Juez inhibirse de cualquier proceso que pueda, razonablemente, arrojar dudas sobre su imparcialidad. La Regla 63.1(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, ordena la inhibición del Juez si tiene prejuicio personal contra las partes o sus abogados.
Como bien expresó el Tribunal Supremo en el caso de Pueblo v. Martés Olán, 103 D.P.R. 351, 355 (1975), para lograr la inhibición de un Juez "no es imprescindible probar la existencia de prejuicio o parcialidad de hecho, basta con la apariencia de parcialidad o prejuicio." Ello reconoce la realidad de que se trata de elementos humanos subjetivos que deben ser adjudicados desde la perspectiva del buen padre de familia.
En las circunstancias del presente caso, cabe la interrogante sobre cuán objetiva y neutral fue la actuación de la Juez. Sus interpretaciones, según vertidas en la transcripción, lesionan la apariencia de imparcialidad y afectan la fe que la ciudadanía tiene en la justicia.
Consecuentemente, las expresiones de la Juez pueden, razonablemente, ser entendidas como que escuchó el testimonio de una parte, que le dio credibilidad y por ello la parte contraria tenía la obligación de refutarla. La insistencia de la Juez en que ya conocía un testimonio prestado bajo juramento y el cuestionamiento reiterado a lo que el demandado debía probar podía razonablemente ser interpretado por el buen padre de familia —no el Juez o las partes— como que desde una etapa previa al juicio había comprometido su imparcialidad.
Téngase presente que cuando el abogado del demandado intentó señalar el asunto del peso de la prueba, sorpresivamente la Juez reaccionó casi retándolo a que presentara una moción de inhibición. Es la propia Juez la que insiste, una y otra vez, en la impresión, quizás imborrable, que le causó el testimonio que escuchó.
Tal y como hemos expresado, la jurisprudencia ha reconocido que la mera apariencia de parcialidad puede provocar la inhibición. La lectura de la transcripción, evaluada desde la perspectiva del buen padre de familia, no del Juez o de las partes, nos lleva a concluir que procede la recusación.
V
Por los fundamentos antes expuestos, se expide el auto de certiorari, se revoca la resolución del Tribunal de Primera Instancia y se declara ha lugar a la recusación presentada.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones