In re Francisco Valcárcel Mulero, **querellado.**

*Número:* CP-95-1                    *Resuelto:* 15 de noviembre de 1996

**I**

*Carlos Lugo Fiol, Procurador General,* y *Miguel Santana Bagur, Procurador General Auxiliar,* abogado de la parte querellante; *Arturo Negrón García,* abogado del querellado, y *Francisco Valcárcel Mulero, pro se.*

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Durante el curso de la litigación en general, y particularmente en los procesos de naturaleza criminal, surgen situaciones conflictivas plagadas de tensión. Los protagonistas de la litigación criminal actúan en representación de intereses diversos y de gran intensidad. Quien representa la parte acusada siente la presión que provoca el deber de asegurarse de que a su cliente se le brinde un juicio justo e imparcial, sujeto a las garantías dispuestas por nuestro sistema constitucional. Igual presión siente el representante del Ministerio Público, pero en favor del Estado. Inevitablemente lleva consigo al recinto judicial la angustia y el coraje de la víctima del delito o los de sus familiares. El juez que preside el procedimiento tiene el deber de asegurarse que el mismo se ajuste al derecho vigente y que salga a relucir la verdad. Cuando todos estos intereses se conjugan adecuadamente se beneficia el sistema.

Por el contrario, cuando la pasión producida por la presión que siente cada uno de los protagonistas de la litigación criminal se descontrola, cuando los abogados se gritan y se faltan el respeto, cuando se lanzan ataques personalistas y, más aún, cuando todo esto se trata de justificar aludiendo a la presión que produce el interés que se trata de salvaguardar, se perjudica el sistema. Todos los jueces, los abogados de defensa y los fiscales tenemos un deber adicional: velar porque el sistema funcione. Para ello tenemos que controlar las pasiones propias de la litigación, moderar la voz, no ofender, omitir ataques personales a los

compañeros abogados, velar porque se cumpla la ley y se garanticen los derechos, pero sin ofender o menospreciar a nadie. En esta ocasión debemos reiterar la necesidad de conciliar provechosamente todos los intereses involucrados en este tipo de situación para el bienestar institucional de nuestro sistema de justicia.

I

El querellado, Lcdo. Francisco Valcárcel Mulero, junto con el Lcdo. Roberto Farinacci García, ostentó la representación legal del Sr. Carlos Ríos Ramos en el caso criminal *Pueblo de Puerto Rico v. Carlos Ríos Ramos*, KJF-92-G0032. Se trataba de un caso que había alcanzado una considerable notoriedad ante los medios noticiosos y la atención pública en general, por cuanto estaba involucrado un alegado encubrimiento por parte del señor Ríos Ramos mientras fungía como policía estatal. Se le imputaba al señor Ríos Ramos, entre otras cosas, haber ocultado la identidad de un testigo presencial de un asesinato que había sido filmado por un camarógrafo de noticias mientras se conducía un reportaje sobre prostitución masculina.

El proceso judicial duró varios días y durante el mismo se suscitaron varios agrios incidentes entre los abogados defensores, los representantes del Ministerio Público[1] y la Juez Ygrí Rivera de Martínez, quien presidió los procedimientos. Esta situación provocó que la Juez Rivera de Martínez ordenara que se transcribieran todos los incidentes y que dicha transcripción fuera elevada ante nuestra consideración.

El 18 de marzo de 1994 se presentaron en la Secretaría de este Tribunal las transcripciones de las vistas celebradas durante los días 4, 5, 6, 7, 8, 11 y 12 de octubre de 1993, en el referido caso. El 5 de abril de 1994 referimos el

---

[1] La Hon. Fiscal Ana Paulina Cruz Vélez y el Hon. Fiscal Rubén Guzmán.

asunto al Procurador General de Puerto Rico para que condujera una investigación y preparara el informe correspondiente. El informe fue presentado el 18 de noviembre de 1994. A raíz del mismo, el 9 de diciembre de 1994 emitimos una resolución mediante la cual instruimos al Procurador General de Puerto Rico que radicara querellas contra los licenciados Roberto Farinacci García[2] y Francisco Valcárcel Mulero.

Al licenciado Valcárcel Mulero se le imputó haber violentado los Cánones 9 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al incurrir "en conducta profesional impropia, en perjuicio del decoro y la solemnidad que deben prevalecer en todo momento en el recinto del Tribunal, mientras se desempeñ[ó] en calidad de [abogado defensor] en el caso *El Pueblo de Puerto Rico v. Carlos Ríos Ramos* ...". Caso Núm. CP-95-1, Primera Parte, Querella, pág. 1.

Se le imputó, además, exhibir "un comportamiento profesional éticamente inapropiado al dirigirse al Tribunal (Hon. Ygrí Rivera de Martínez, J.) en varias ocasiones, en forma irreverente y desconsiderada; al hacer comentarios y utilizar un tono de voz alto e inadecuado; al cuestionar las determinaciones del Tribunal y hacer imputaciones infundadas contra la Juez que presidía el proceso, llegando al extremo de lesionar la dignidad personal e institucional del referido miembro de la judicatura". Caso Núm. CP-95-1, Primera Parte, Querella, pág. 2. El licenciado Valcárcel Mulero, según refiere la querella, no "se comportó con el decoro y la seriedad que la ocasión ameritaba, cuando en determinado momento durante el proceso, requirió de la Juez una explicación por el uso del vocablo 'machista', el cual se había utilizado en una discusión previa entre las

---

[2] A raíz de la muerte del licenciado Roberto Farinacci García emitimos una resolución el pasado 12 de abril de 1996 mediante la cual ordenamos el archivo y sobreseimiento de la querella presentada en su contra. Por consiguiente, en lo sucesivo no nos referiremos a los cargos presentados contra el licenciado Farinacci García.

partes y posteriormente sugirió que se denominara su conducta para el récord como irrespetuosa". Íd.

Después de varios trámites procesales, el 27 de marzo de 1995 el licenciado Valcárcel Mulero presentó su contestación a la querella. En la misma relata varios incidentes ocurridos durante el transcurso del proceso, resaltando aquéllos en los que la Hon. Juez Rivera de Martínez hacía manifestaciones a los abogados defensores. A base de lo anterior, aunque hace constar "con relación al incidente que motivó la presente querella— su expresión de formal arrepentimiento por cualquier manifestación, gesto o actuación que en forma alguna pudiera haber ofendido la sensibilidad y dignidad del Tribunal", el licenciado Valcárcel Mulero sostiene que los comentarios efectuados por la Juez "no abonaron en nada el terreno para mantener en sala el ambiente de respeto, cordialidad y decoro que debía permear y sobre el cual eran igualmente responsables todos los presentes". Caso Núm. CP-95-1, Primera Parte, Contestación a querella, págs. 3 y 8.

Vista la contestación presentada por el licenciado Valcárcel Mulero, nombramos a un Comisionado Especial para recibir la prueba que las partes tuvieran a bien presentar. La vista fue celebrada el 12 de junio de 1995. Se admitió en evidencia el Informe del Procurador General de 8 de noviembre de 1994, la transcripción de los procedimientos ocurridos durante los varios días que tomó la celebración del juicio en el caso *Pueblo v. Ríos Ramos*, supra, y una cinta magnetofónica que recoge un incidente ocurrido el 6 de octubre de 1993, el cual relataremos detalladamente más adelante. Además, el licenciado Valcárcel Mulero testificó bajo juramento.[3]

---

[3] Del testimonio del licenciado Valcárcel Mulero y en relación con el incidente ocurrido el 6 de octubre de 1993, que específicamente se incluye en la querella, el Comisionado Especial consignó lo siguiente: "Declaró además que en Sala él trajo el incidente mencionado porque lo acusaban de ser machista y él no quería que en la prensa apareciera como que era machista." Caso Núm. CP-95-1, Primera Parte, Informe del Comisionado Especial, pág. 4.

Hemos tenido oportunidad de evaluar detenidamente la querella, a la luz de las posiciones esgrimidas por el Procurador General y el licenciado Valcárcel Mulero. También hemos evaluado extensamente las transcripciones de las vistas y las grabaciones de las mismas en cinta magnetofónica. Igualmente hemos evaluado los procedimientos ante el Comisionado Especial. Estamos en posición de resolver.

## II

La situación que presenta el caso ante nuestra consideración nos hace recordar que "el ejercicio de la abogacía es una tarea difícil y compleja". *In re Cardona Álvarez*, 116 D.P.R. 895, 902 (1986). En nuestra jurisdicción, y en relación a la litigación, la tarea tiende a volverse aún más compleja, dada la naturaleza adversativa de nuestro sistema de justicia. Podría razonablemente entenderse que las tensiones que produce la litigación criminal dificulta todavía más la gestión. Reconocemos esta realidad. Por lo tanto, hemos resaltado que "la clave para enjuiciar justamente ... conducta [como la que se le imputa al licenciado Valcárcel Mulero] es examinar y balancear apropiadamente los valores en juego". *In re Cardona Álvarez*, supra, pág. 903.([4])

Así, por un lado, en relación con la legítima gestión del abogado o abogada en la tramitación de la causa que se le ha encomendado, hemos reconocido una "amplia y dilatada libertad de defensa ... en el ejercicio de su profesión". *In re Cardona Álvarez*, supra, pág. 904. *Cf. In re Miranda Marchand*, 135 D.P.R. 580 (1994). Los cánones de ética profesional no operan como una fuente de censura

---

([4]) Al resolver, además, tenemos presente que "resulta un tanto difícil desde este Foro apelativo evaluar cabal y totalmente todos los hechos, sin haber tenido la oportunidad de observar las actitudes, gestos, énfasis, tono de voz, y otros factores. Siempre existe el margen de caer en los extremos de enjuiciar leve o severamente la conducta profesional". *In re Martínez Texidor*, 130 D.P.R. 905, 917 (1992).

previa en relación con las manifestaciones legítimas de un abogado. Tampoco imponen una camisa de fuerza inquebrantable en relación con sus gestiones profesionales. Estas limitaciones operarían en detrimento, no sólo de la más eficiente administración de la justicia, sino también del desarrollo y enriquecimiento de nuestro derecho, que se nutre en gran medida de la imaginación y del ejercicio de la libertad de expresión de los abogados y las abogadas pertenecientes al foro.

Esto, lógicamente, no quiere decir que toda conducta en que incurra un abogado o abogada en la tramitación de un caso será inmune al ejercicio de nuestra jurisdicción disciplinaria. Existen otros intereses que debe tener presente siempre todo abogado y abogada en nuestro Foro y que se deben conjugar con los demás intereses que afloren en el desempeño de su encomienda. Ninguno de ellos debe ser desplazado. Es por esto que hemos dicho que el adecuado funcionamiento de nuestro sistema de justicia, cuyos procesos van encaminados a encontrar la verdad, "no es incompatible con el respeto y consideración hacia los tribunales". *In re Cardona Álvarez*, supra, págs. 903–904.

Es desde esta perspectiva que debe entenderse el postulado deontológico que recogen los Cánones 9 y 38 del Código de Ética Profesional, *supra*.(5) Estos, junto a otros

---

(5) Disponen, en lo pertinente, estos cánones como sigue:

**"Canon 9. Conducta del abogado ante los tribunales**

"El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

"El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa." 4 L.P.R.A. Ap. IX.

**"Canon 38. Preservación del honor y dignidad de la profesión**

"El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su con-

postulados de similar naturaleza, guían la gestión profesional de los abogados y abogadas en nuestra jurisdicción. En consideración con estos postulados hemos descrito el balance que debe prevalecer entre los intereses que entran en juego durante el ejercicio de la profesión, resaltando que "[e]l deber del abogado de defender en forma diligente los intereses de su cliente, debe ejercerse de forma tal que no resulte en una violación a las disposiciones que reglamentan la conducta del abogado para con los tribunales y que imponen, a los primeros, observar una conducta del mayor respeto a los tribunales". *In re Miranda Marchand,* supra, pág. 588. Véanse, además: *In re Martínez Texidor,* 130 D.P.R. 905 (1992); *In re Cardona Álvarez,* supra; *In re Pagán,* 116 D.P.R. 107 (1985); *In re Martínez, Jr.,* 108 D.P.R. 158 (1978); *In re Pagán Hernández,* 105 D.P.R. 796 (1977); *De Latorre v. Alcalde de Carolina,* 104 D.P.R. 523 (1976).[6]

■ Finalmente, al establecer esta norma de respeto y consideración hacia los tribunales, atendemos situaciones que trascienden intereses individuales y circunstancias particulares. La misma busca conferir estabilidad y firmeza a las determinaciones que se toman en torno a controversias planteadas dentro de nuestro sistema inherentemente contencioso de justicia. Por ello, los abogados y abogadas, al dirigirse a los tribunales o en relación con éstos, deben "tener un claro concepto de la misión fundamental pública que ejerce[n]. En la escala de valores profesionales ha de colocar a ésta por encima de cualesquiera personalismos". *In re Cardona Álvarez,* supra, pág. 903.

ducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Tal participación conlleva necesariamente asumir posiciones que puedan resultarle personalmente desagradables pero que redundan en beneficio de la profesión ....

"Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable." 4 L.P.R.A. Ap. IX.

[6] En igual sentido nos habíamos expresado con anterioridad a la adopción del vigente Código de Ética Profesional de 24 de diciembre de 1970. *Cf. Coll Moya v. Alcaide, Cárcel Municipal,* 89 D.P.R. 225 (1963); *In re Andréu Ribas,* 81 D.P.R. 90 (1959).

## III

Es dentro del marco teórico reseñado que debemos analizar la situación de hechos que presenta el caso ante nuestra consideración. Para entenderlo cabalmente haremos una exposición detallada de lo sucedido. Por la naturaleza de los cargos imputados y en atención al hecho de que la conducta señalada se refiere a varios incidentes que se prolongaron durante un período sustancialmente largo, nos vemos precisados a reproducir en detalle las porciones pertinentes de la transcripción de los procedimientos.

Durante la vista celebrada el 6 de octubre de 1993 se suscitó un incidente en el cual el licenciado Valcárcel Mulero se expresó con relación a la Fiscal Cruz Vélez de la forma siguiente:

LCDO. VALCARCEL:
Juez, vamos a pedir antes de que traigan el jurado que cuando la compañera objete porque conmigo no hay problema que ella no salga gritando ahí como una gallina loca.
HON. JUEZ:
Pues si es que ustedes están, son más gritones 20 veces que ella.
FISCAL CRUZ:
¿Cómo una qué, Juez, dijo el compañero? ¿Cómo una qué?
FISCAL GUZMAN:
Le ha faltado el respeto a la compañera.
HON. JUEZ:
Aquí no hay fuerza moral para hacer un comentario así.
FISCAL CRUZ:
Juez, ¿que es lo que ha dicho el compañero?
LCDO. VALCARCEL:
Nada. Que no salga gri...
FISCAL GUZMAN:
Se le ha faltado el respeto a la compañera.
FISCAL CRUZ:
Aquí la que tiene, que se cree que es boxeador es el compañero, Vuestro Honor.
FISCAL GUZMAN:
Y la compañera....

FISCAL CRUZ:

Y nosotros no nos vamos entonces, si la Juez no da unas instrucciones no vamos a seguir porque no vamos a aguantar falta de respeto de los compañeros que no se saben...

HON. JUEZ:

Ya se lo hemos dicho en más de cinco o seis ocasiones. Perdóneme.

FISCAL GUZMAN:

Sí, su Señoría, pero lo que pasa es que la compañera...

FISCAL CRUZ:

Nosotros no podemos seguir así, Vuestro Honor.

FISCAL GUZMAN:

... porque los compañeros siempre el ataque es con la compañera.

LCDO. VALCARCEL:

Yo no ataco a nadie.

FISCAL CRUZ:

Es que parece que...

HON. JUEZ:

Aquí, no...

FISCAL GUZMAN:

Le ha dicho niña, le ha dicho ahora gallina loca. Transcripción de Evidencia de 6 de octubre de 1993, págs. 75–76.

Al aludir al vocablo "niña", el Fiscal Guzmán hacía referencia a un suceso ocurrido el día anterior, 5 de octubre de 1993. Se argumentaba entonces respecto a objeciones planteadas por la Fiscal Cruz Vélez y sucedió lo siguiente:

FISCAL CRUZ:

Pero sigue argumentando el compañero, Vuestro Honor.

LIC. VALCARCEL:

Perdóneme, es lo último que voy a decir.

HON. JUEZ:

Vamos... vamos a...

FISCAL CRUZ:

Pero es que tenemos reparo, Vuestro Honor, a que haga comentarios entonces.

LIC. VALCARCEL:

Mire, Juez, lo último que yo voy a decir por hoy. Si fuéramos abogados jóvenes o niñas empezando, pero una fiscal de muchísimos años de experiencia...

FISCAL CRUZ:

Pero Juez, va a hacer comentarios... El no aprende.

HON. JUEZ:

Sí, pero... pero compañero, perdóneme. Eso no va con la experiencia. Hay preguntas que realmente no son fáciles de estructurar con la limitación de que no sean sugestivas y otras cosas. O sea, y dentro de nuestra discreción, pues, a veces somos flexibles porque estamos conscientes de ello. Y las Reglas no están ahí para impedir los interrogatorios.

LIC. VALCARCEL:

Yo le dejo eso a usted allá, Juez." Caso Núm. CP-95-1, Segunda Parte, Transcripción de Evidencia de 4 y 5 de octubre de 1993, pág. 116.

El mismo 5 de octubre de 1993, pocos minutos después, ocurrió el siguiente incidente, donde el licenciado Valcárcel Mulero volvió a utilizar el vocablo "niña":

LCDO. VALCARCEL:

Sí, antes que traiga el jurado, Juez, es posible que usted le diga a la fiscal... ya usted se lo dijo dos veces y ahorita fuimos ahí y se lo volvió a decir, ella no es ninguna niña en términos profesionales, ella tiene mucha experiencia, que por favor se limite. Nosotros nos hemos limitados, si nos estamos limitando...

HON. JUEZ:

Yo no veo dónde está la limitación de ustedes.

LCDO. VALCARCEL:

Sí, ya... Sí, nos estamos limitando, Juez, pero si vamos a seguir...

HON. JUEZ:

Todavía no la he visto. Ahora es el mejor ejemplo.

LCDO. VALCARCEL:

Su Señoría, si lo que le estoy pidiendo es que lo repare usted. Que le pida a ella que eso que él llama puñaladas yo no le voy a llamar puñaladas, pero le voy a llamar habilidad excesiva de ella para orientar al testigo y para sugerirle contestaciones. Que usted, que es la máxima magistratura aquí, que la calme y la pare, la oriente.

FISCAL CRUZ:

Si nos permite el Tribunal, nosotros queremos aclarar algo. Nosotros lo de niña... fiscal, somos la fiscal y nosotros no vamos a permitir ningún tipo de comentario. No le decimos a los compañeros, cuando se ponen un poquito con objeciones que no vienen al caso, no le comentamos niños porque los tratamos con respeto y ese respeto sí se lo vamos a exigir a ellos. Caso Núm.

CP-95-1, Segunda Parte, Transcripción de Evidencia de 4 y 5 de octubre de 1993, págs. 124–125.

El 6 de octubre de 1993 se publicó en la prensa, alegadamente, que el licenciado Valcárcel Mulero le había llamado "niña" a la Fiscal Cruz Vélez. Es en relación con este artículo de prensa que sucede el próximo incidente que relacionaremos en el cual el licenciado Valcárcel Mulero le imputa al Fiscal Guzmán haberle dado cierta información a la prensa.

LCDO. VALCARCEL:
No, yo no he dicho niña. No, no, eso se lo dijo él al periodista del *San Juan Star*, él.
FISCAL GUZMAN:
No, no, jamás.
LCDO. VALCARCEL:
Ahora es que yo sé quién es la fuente. Mire, Juez,...
FISCAL GUZMAN:
El compañero le dijo ayer,...
HON. JUEZ:
Perdóneme, qué es eso.
FISCAL GUZMAN:
... en el día de ayer a la compañera Fiscal que era...
LCDO. FARINACCI:
Que no era.
HON. JUEZ:
Perdóneme, yo no quiero que todo el mundo grite. Díganme, la argumenta... aguántemela un momento.
LCDO. VALCARCEL:
Mire, Honorable, déjeme traerle un incidente aquí. Hoy aparece en el periódico *SAN JUAN STAR*, y yo no critico al periodista, que yo le había dicho a la compañera que era una niña que empezaba la profesión. El del *SAN JUAN STAR* no estuvo aquí cuando ese incidente. Ahora sale el compañero trayendo el incidente de que yo le dije niña, la fuente que el *SAN JUAN STAR* no cita no está allí, ahora yo sé quién es. Mírelo aquí.
HON. JUEZ:
Perdóneme, vamos a evitar hacer...
FISCAL GUZMAN:
El que no haga imputaciones el compañero.
HON. JUEZ:
Perdónenme los compañeros.

FISCAL GUZMAN:

Yo les...

HON. JUEZ:

Es una imputación que no tiene lugar.

LCDO. VALCARCEL:

Yo no dije nada de eso ayer.

FISCAL GUZMAN:

Si el que da las conferencias de prensa aquí es el compañero. Aquí eso lo sabe todo el mundo.

HON. JUEZ:

Usted no en una ocasión, en varias...

FISCAL GUZMAN:

Que el compañero es el que da conferencias de prensa.

HON. JUEZ:

... ha hecho alusión, no exactamente en esa forma, al vocablo niña, cabe la confusión.

LCDO. VALCARCEL:

No, la misma Paulita sabe que yo no dije eso. Yo dije la compañera...

HON. JUEZ:

Perdóneme un momentito. ¿Usted me va a desmentir a mí? Porque yo lo oí.

LCDO. VALCARCEL:

No, porque... entonces Paulita y yo estamos equivocados.

HON. JUEZ:

O es que vamos a...

LCDO. VALCARCEL:

Mire, Juez, yo lo que le dije a ella....

LCDO. FARINACCI:

Que no es una niña. Dijo que no lo era.

LCDO. VALCARCEL:

Que era una persona de experiencia que no era una niña en la profesión.

HON. JUEZ:

Por eso, yo he dicho que ha aludido al vocablo niña y qué pasa que en esas griterías y en esas confusiones

LCDO. VALCARCEL:

¿Usted leyó el *SAN JUAN STAR?*

HON. JUEZ:

... cualquier, no lo he leído pero cualquiera puede confundirse.

LCDO. VALCARCEL:

Okey, pues mire, léalo, Honorable, léalo para que usted vea que hay una fuente que dice que...

HON. JUEZ:

Sí, pero yo no voy aquí a llenar el récord de imputaciones. Porque lo mismo...

LCDO. VALCARCEL:

Ella es la fuente.

HON. JUEZ:

... perdóneme...

FISCAL GUZMAN:

La fuente es el señor aquí.

HON. JUEZ:

... perdóneme el compañero y que conste...

FISCAL GUZMAN:

Que tiene "guille" de boxeador y da conferencias de prensa.

HON. JUEZ:

... perdónenme, vamos a evitar eso. Que conste para el récord por cualquier evento futuro que no solamente no hace caso de lo que el Tribunal está señalando, si no que señala al compañero Fiscal y dice, "Este es la fuente."

LCDO. VALCARCEL:

Y lo repito.

HON. JUEZ:

Y horita por más que le llamé la atención al licenciado Farinacci se viró de espalda, no me miró y esto ocurre a cada rato. Yo no quiero que los compañeros le sigan faltando el respeto al Tribunal y cada vez que ocurra eso lo voy a hacer constar por el récord porque ya la situación está pasando de castaño a oscuro y para poder tomar unas decisiones ulteriores, si es que se justifican, lo voy a señalar cada vez que sea necesario. Tráigase al jurado.

FISCAL CRUZ:

Con el permiso del Tribunal, brevemente. Sí, Vuestro Honor, nosotros le vamos a suplicar a los compañeros...

HON. JUEZ:

Ese vocablo "gallina" a la compañera también es impropio por completo.

FISCAL CRUZ:

Nosotros le queremos suplicar, Vuestro Honor, nosotros entendemos que ellos tienen recursos que no tienen que ponerse con esas bajesas [sic]. Si los compañeros no están acostumbrados a litigar con una mujer Fiscal lo sentimos por ellos, pero nosotros sí tenemos que hacer nuestro trabajo y lo hacemos con integridad. Y que a ellos no les guste como esta Fiscal defiende sus casos, es problema de ellos, le solicitamos que busquen herramientas legales porque nosotros nos parece que con decoro se litiga en los tribunales. No nos gusta como el machismo im-

perante está permitiendo que predomine en este Tribunal porque esto no es ni una pelea, ni un ring de boxeo...

HON. JUEZ:

Perdóneme, yo tomo excepción de lo que predomine en este Tribunal. Porque nosotros todas las veces que los compañeros entendemos que faltan el respeto, le llamamos la atención. No permitimos eso. Ellos se exceden, es cierto, pero nosotros le llamamos la atención, nosotros no...

FISCAL CRUZ:

Lo sabemos, Vuestro Honor.

HON. JUEZ:

... no aguantamos eso porque si alguna juez es bien formal en sus cosas, esa soy yo.

FISCAL CRUZ:

Nosotros lo sabemos, pero es que nos preocupa...

LCDO. FARINACCI:

Sí, y yo quiero aclarar una cosa para el récord.

FISCAL CRUZ:

Pero si no deja terminar el compañero.

LCDO. FARINACCI:

Pero, pero sí...

FISCAL CRUZ:

Es que nos preocupa porque los compañeros se les llama constantemente.

HON. JUEZ:

Y el machismo predominará en ellos...

FISCAL CRUZ:

A eso es lo que nos referimos.

HON. JUEZ:

pero no en el Tribunal, en ellos. Caso Núm. CP-95-1, Segunda Parte, Transcripción de Evidencia de 6 de octubre de 1993, págs. 76–81.

Es en este momento que el licenciado Valcárcel Mulero confronta a la Juez Rivera de Martínez en cuanto al vocablo "machista". Al respecto se desarrolla el siguiente incidente.

LCDO. VALCARCEL:

Pero de adonde usted se saca que yo soy machista, Juez.

FISCAL GUZMAN:

Mire que falta de respeto, Juez.

HON. JUEZ:

Perdóneme, esa no es la manera de dirigirse al Tribunal.

LCDO. VALCARCEL:

Pues, pero y cómo usted hace una aseveración como esa.

HON. JUEZ:

Pero, pues, perdóneme. Usted no me puede llamar la atención a mí. Usted tiene que dirigirse al Tribunal...

LCDO. VALCARCEL:

¡Ah!, pues déjeme dirigirme al Tribunal.

HON. JUEZ:

... con recursos legales. Usted no puede decir eso.

LCDO. VALCARCEL:

Juez, mire, aquí no estamos ventilando si Paulina es más femenina o menos femenina. Jamás en mi vida yo veo una Fiscal como mujer o hombre porque no hay sexo. En esta litigación no hay hombres y mujeres. Lo que sucede es que yo estoy diciendo que alguien le dijo al *SAN JUAN STAR*...

FISCAL GUZMAN:

Y es el señor aquí.

LCDO. VALCARCEL:

... que yo había dicho...

FISCAL GUZMAN:

Y después viene a imputárselo a nosotros. Y que conste en el récord que está señalando al Fiscal nuevamente y que siempre cuando se dirige a su Señoría lo hace con falta de respeto y después viene a arreglar aquí para el récord.

LCDO. VALCARCEL:

Y eso no es...

FISCAL GUZMAN:

Y esas no son maneras de dirigirse a su Señoría.

HON. JUEZ:

Mire, mire, compañero, usted se puede dirigir al Tribunal todas las veces que quiera siempre que lo haga conforme a la ley. Si usted me dice, "Mire, Juez, yo quiero aclarar eso" y lo quiero aclarar, con mucho gusto. Pero usted no puede desde ahí estar dirigiendo como si estuviera en una plaza pública y así lo hacen desgraciadamente ambos abogados continuamente, esto es como si estuvieran en cualquier lugar público sin mesura, sin decoro y sin los recursos legales que imperan en el Tribunal. Eso es lo que me preocupa y creo que puede hacer del juicio en vez de una cosa que deba llevarse conforme a las leyes y a todas las normas vigentes pues en una forma, que inclusive el jurado, puede tomar una mala impresión de ese tipo de cosa. Y nosotros estamos aquí no como un mero observador, sino con la obligación de hacer valer la dignidad del Tribunal... Puede dirigirse ahora.

LCDO. VALCARCEL:

Honorable Juez, yo quiero que me excuse porque salí de ahí y le falté, en eso sí. Debí haberme parado, Juez, perdóneme, pero cuando uno se irri...

HON. JUEZ:

Esas son las actitudes que yo tomé como unas actitudes ·

LCDO. VALCARCEL:

Sí, sí.

HON. JUEZ:

... que normalmente se consideran machistas, ¿ve?

LCDO. VALCARCEL:

Y ese no soy yo, no. Porque eso se le fue, lo del machista.

HON. JUEZ:

Sí, pero es que ésta no es la única vez. Es que siempre. Yo quisiera que usted después que termine este caso para ayudarlo, oyera esa cinta. Porque es la única manera de que se va a dar cuenta de lo mal que se oye eso. Parecen a veces guapo de barrio. Eso está muy mal. De verdad.

LCDO. VALCARCEL:

Juez, lo que yo... todos estos incidentes lo suscita que yo le pedí a usted que le pidiera a la compañera que cuando ella fuera a objetar se parara, pidiera permiso, lo que habíamos acordado. No hay nada nuevo y fuéramos donde usted discutiéramos en voz baja la objeción y no había que sacar a nadie. Pero mire lo que se ha formado. Entonces viene y dice y saca que yo dije que ella era una niña. Eso no es correcto. Yo dije que ella era una persona de mucha experiencia y que ella no era ninguna niña en la profesión refiriéndome a que era una persona de muchísima experiencia. Aquí eso de machismo, de diferencias por sexo, eso no debe estar discutiéndose aquí, pero alguien lo trajo y se lo dio al periodista del *SAN JUAN STAR*...

HON. JUEZ:

Lo que pasa es que...

LCDO. VALCARCEL:

Y yo no fui. Porque yo no fui a decir...

HON. JUEZ:

No, perdóneme, lo que pasa es que en el momento en que usted lo dice yo creo que ni siquiera la Fiscal lo entendió porque ella se paró y me dijo, "Juez, niña, no, que se refiera a mí como la Fiscal Cruz Vélez." O sea, ella lo percibió de manera incorrecta.

LCDO. VALCARCEL:

Ella no lo percibió de manera incorrecta...

HON. JUEZ:

... y entonces...

LCDO. VALCARCEL:

... porque yo hablé con ella hoy en la cafetería y no perci...

HON. JUEZ:

Por eso. Compañero, yo me estoy circunscribiendo al récord de mi recuerdo. Eso fue lo que ella hizo. Tomó excepción y dijo, "Niña, no, Juez, que se haga constar que yo soy la Fiscal Cruz Vélez." En el público cualquier persona lo puede haber percibido así porque yo le confieso que yo también me confundí cuando ella me trae eso. Yo dije, "¡Ah! pues...

LCDO. VALCARCEL:

Pues, pues se confundió con.

HON. JUEZ:

... pues tiene que haber sido que entonces yo entendí mal y entonces el tomar excepción ella, me confundió.

LCDO. VALCARCEL:

Pero que usted sabe porque usted me conoce a mí que jamás en mi vida yo he ofendido a nadie porque sea mujer o sea macho.

HON. JUEZ:

Yo no lo sé.

LCDO. VALCARCEL:

Bueno, me conoce. Juez, yo no he ofendido...

HON. JUEZ:

Perdóneme, yo lo conozco, yo lo conozco y lo aprecio

LCDO. VALCARCEL:

Y yo a usted.

HON. JUEZ:

... y lo estimo mucho. Pero yo no sé todo lo que usted ha hecho en su vida. Yo no sé a cuántos ha ofendido. Si le grita a los demás como grita aquí, deben ser muchísimos. Caso Núm. CP-95-1, Segunda Parte, Transcripción de Evidencia de 6 de octubre de 1993, págs. 81–85.

No conforme con lo sucedido hasta el momento, el licenciado Valcárcel Mulero vuelve a cuestionar a la Juez Rivera de Martínez sobre el vocablo "machista".

LCDO. VALCARCEL:

Oiga, Juez, ¿pero usted piensa realmente eso que usted dijo de que yo soy machista?

HON. JUEZ:

Bueno, la demostración que ha dado es bien triste en ese sentido.

LCDO. VALCARCEL:

Digo, usted, bendito, usted nunca ha entrado en esas consideraciones conmigo y la... el conocimiento que yo tengo de usted...

HON. JUEZ:

No, y yo en lo personal lo aprecio muchísimo pero cuando está en el Tribunal es otra cosa. Es "Dr. Jake & Mr. Hide." (sic)

LCDO. VALCARCEL:

¡Ah, bueno! Juez, yo tengo la obligación de defender adecuadamente y es lo que yo entiendo que es adecuadamente.

HON. JUEZ:

Usted usó el vocablo correcto. "Adecuadamente" y "adecuadamente" supone que sea con decoro, con suavidad y con energía para plantear los argumentos en forma legal, no personal.

LCDO. VALCARCEL:

No, pero si nadie está en lo personal.

HON. JUEZ:

Es que a veces lo parecen.

LCDO. VALCARCEL:

Pero si es que ellos son iguales.

HON. JUEZ:

Yo lo voy a invitar de verdad que cuando termine el caso un día, una tarde que esta Juez no tenga mucho trabajo, vamos a oir siquiera una hora de este proceso, usted y yo en la cinta para que usted se oiga. Bueno, ustedes tienen la grabación, por favor, escúchense porque es que a veces pues raya. Caso Núm. CP-95-1, Segunda Parte, Transcripción de Evidencia de 6 de octubre de 1993, págs. 85–86.

Después del incidente transcrito se suscitó otro en relación al licenciado Farinacci. Algún tiempo después se continuó la conversación relacionada al uso del adjetivo "machista".

FISCAL CRUZ:

Si nos permite el Tribunal. Nosotros queremos aclarar cuando hacemos referencia a machista nosotras no esperamos ninguna consideración por parte de ellos. Porque nosotras sabemos que estamos capacitadas y no necesitamos nada en ese sentido, no es eso. Sí machista en la forma agrevisa en que se comportan. Es por las actitudes de ellos que decimos que son machistas y por los comentarios que en algunas ocasiones hacen los compañeros. Comentarios en términos para ver si nos pueden amedrentar, pero a esta Fiscal no la van a amedrentar.

HON. JUEZ:

Yo no estoy reclamando que los compañeros ni para la Fiscal ni para mí, ni para las damas del jurado ni para el personal de sala, por el hecho de que seamos mujeres tengamos un trato especial. No es de eso de lo que se trata. Ahora, yo exijo como juez que se tenga en mente que todo abogado tiene el deber de no mancillar la dignidad del Tribunal y de tratar con respeto a los jueces y nosotros aquí hemos sido, en ese sentido, entiendo que muy cuidadosos y le hemos dejado pasar mil cosas. De ahora en adelante no lo haremos. Lo vamos a llevar todo al récord, pero las cosas pasan y llega el momento en que entonces hay que hacerse sentir que no se puede dejar la dignidad del Tribunal. Y eso, pues, lo tomaremos en consideración en términos de que el compañero ya ha dicho que él utilizará lo que sea necesario y que primero es su cliente y luego esas consideraciones que los Cánones de Ética se las imponen a un nivel igual o mayor que la defensa. El tiene que tener en mente todo lo que sea necesario desde el punto de vista legal y lícito también para defender a su cliente, sin que falte al decoro, sin que le falte el respeto a los jueces y a los fiscales y a los demás compañeros del Tribunal. Y sin que en el afán por defender a su cliente incumpla con las leyes, las normas y los Cánones de Ética. Esa es la ley. Vamos a continuar.

LCDO. VALCARCEL:

Juez, yo voy a pedir, fíjese y para terminar. Vamos a pedir, son las tres y cuarto, un receso, pero déjeme decirle algo un minuto para dejarlo en el récord. Voy a pedir un receso para calmar un poco esto. Mire, mañana va a salir en la prensa que usted dijo que nosotros éramos machistas. Usted no tiene elementos de juicio para decirlo porque no los tiene.

HON. JUEZ:

Yo los tengo.

LCDO. VALCARCEL:

Pues, dígamelos. Me gustaría...

HON. JUEZ:

Perdóneme, ya yo señalé. Ya yo señalé que todas las cosas que ustedes han hecho, la manera en que faltan el respeto, la manera en que gritan.

LCDO. VALCARCEL:

Pero eso son groseros porque son...

HON. JUEZ:

Y he señalado, perdóneme, ...

LCDO. VALCARCEL:

... pero eso son machistas.

HON. JUEZ:

... he señalado, he señalado que comúnmente cuando los hombre se comportan así yo entiendo el sentir de la Fiscal y eso lo dije claramente...

LCDO. VALCARCEL:

Pero eso no es ser machista, Juez.

HON. JUEZ:

... porque la gente... pues yo no sé. Ese es mi concepto.

LCDO. VALCARCEL:

Eso es ser irrespetuoso. Mire, llámeme irrespetuoso

HON. JUEZ:

Pues, gracias, gracias por...

LCDO. VALCARCEL:

Y en eso tiene razón.

HON. JUEZ:

... gracias por aclarar el récord.

LCDO. VALCARCEL:

Y yo le digo, mire...

HON. JUEZ:

Entonces no es machista. Es malcriado y es irrespetuoso con el Tribunal.

LCDO. VALCARCEL:

Seguro, pues póngalo así. Pues, póngalo así, Juez, pero no ponga lo otro.

HON. JUEZ:

Bien, perfecto. Pues que se tome como una afirmación....

LCDO. VALCARCEL:

Sí, seguro.

HON. JUEZ:

... que él no es machista que él es irrespetuoso con el Tribunal.

LCDO. VALCARCEL:

Sí, que usted entendió que yo era irrespetuoso.

HON. JUEZ:

No, no, no, que yo entendí no. Eso lo ha dicho usted.

LCDO. VALCARCEL:

Por eso, los hechos esos usted entendió que yo soy irrespetuoso con el Tribunal. Que yo entiendo que en este fragor de la lucha esta del adversario, el Fiscal tratanto de probar y el abogado tratando de defender pues, mire, Farinacci le pudo haber dado la espalda. Uno se levanta indignado en algún momento.

HON. JUEZ:

No, le pudo haber dado la espalda, no.

LCDO. VALCARCEL:

Perdóneme.

HON. JUEZ:

Continuamente da la espalda.

LCDO. VALCARCEL:

Está bien. Pero, mire...

HON. JUEZ:

Y yo me estoy dirigiendo a él y él da la espalda y sigue hablando. Es más, peor aún. La Fiscal interrogando y yo creo que como en cinco ocasiones, bajito para no interrumpir yo también, le hago de aquí así con la pluma, ni siquiera con el mallete porque hablan tan alto que el mismo jurado yo lo noto que no puede escuchar y yo tengo dificultad y siguen hablando. A pesar de eso.

LCDO. VALCARCEL:

Está bien. Pero que tiene que ver. eso con ser machista o no ser machista.

HON. JUEZ:

Está bien. Ya no vamos a volver a eso. Ya usted aclaró que no era machista. Que es un irrespetuoso y yo creo que tiene razón.

LCDO. VALCARCEL:

Sí, que usted entendió que eso era un acto de irrespetuoso. Bien.

HON. JUEZ:

No, yo no lo entendí. Ya yo he sido clara en todo lo que he dicho.

LCDO. VALCARCEL:

Voy a pedir un receso, Juez, para...

HON. JUEZ:

Vamos a recesar. Caso Núm. CP-95-1, Segunda Parte, Transcripción de Evidencia de 6 de octubre de 1993, págs. 88–93.

Hemos analizado la transcripción de evidencia de los procedimientos acaecidos en instancia detenidamente, e igualmente hemos escuchado la grabación de las cintas que recogen los incidentes que hemos citado. Durante el transcurso de estos incidentes, el licenciado Valcárcel subió el tono de voz en varias ocasiones e interrumpía a la juez constantemente.

Después de analizar los incidentes reseñados, concluimos que el licenciado Valcárcel Mulero efectivamente transgredió los límites de lo que estamos dispuestos a reconocer como conducta legítima por parte de los abogados y abogadas ante los tribunales en el ejercicio de sus

funciones. Increpó innecesariamente a la juez respecto a los comentarios alusivos al término "machista", que después de todo ni siquiera había sido dicho por la juez, sino por la Fiscal Cruz Vélez ante comentarios del licenciado Valcárcel Mulero sobre su impresión de que la Fiscal reaccionaba como una "gallina loca". Al así actuar, el licenciado Valcárcel Mulero se condujo guiado por intereses personales, pues lo que le importaba era lo que de él se pudiera publicar en la prensa del país. Desplazó por consideraciones personales el respeto que merece el tribunal. Ello surge no sólo del texto de la transcripción de evidencia, sino también de sus explicaciones ante el Comisionado Especial. La situación no ameritaba tal reacción.

Del licenciado Valcárcel no estar de acuerdo con las expresiones que se habían ventilado sobre su alegado machismo, un recurso prudente y adecuado hubiera sido sencillamente vertir tal inquietud para el récord. Es inaceptable, sin embargo, la forma en la que el licenciado Valcárcel increpó a la juez con el propósito de que ésta expresara las razones por las cuales ella entendía que él era un machista.

■ También se excedió el licenciado Valcárcel Mulero al continuar discutiendo con la juez para que ella aceptara que su conducta, más que machista, era irrespetuosa. Después de todo, " 'las personas involucradas en el proceso judicial ... tienen un deber de cortesía con los demás participantes. La necesidad de que haya civilidad en el marco inherentemente contencioso del proceso adversativo, sugiere que los miembros de la clase togada hagan sus críticas al sistema en un tono profesional y cortés' ". *In re Cardona Álvarez*, supra, pág. 905.

En este caso, el licenciado Valcárcel Mulero faltó patentemente a su deber de cortesía, no sólo hacia la juez, sino también a sus compañeros y a su compañera de profesión. Al Fiscal Guzmán le imputó haber dado información falsa

a la prensa, sin más evidencia que sostuviera sus expresiones que su propia intuición. No obstante habérsele dado una explicación razonable de lo-que pudo haber sucedido, el licenciado Valcárcel Mulero reiteró su imputación contra el Fiscal Guzmán. También faltó su deber de cortesía hacia la Fiscal Cruz Vélez al describirla como una "gallina loca". Censuramos enérgicamente este tipo de comentario por parte de abogados inmersos en la práctica forense. Tal conducta no puede justificarse de forma alguna, menos aún aludiendo al interés de defender adecuadamente la causa de un cliente acusado de delito.

Al efecto hemos expresado lo siguiente, aludiendo al deber de preservar el honor y la dignidad de la profesión legal, que surge del Canon 38 del Código de Ética Profesional:

> Reafirmamos una vez más que la preservación del honor y la dignidad de la profesión legal exige una buena relación interpersonal entre abogados. Ello es responsabilidad ineludible de cada togado y conlleva observar con sus compañeros y el tribunal una actitud respetuosa, sincera, honrada, cordial y de cooperación profesional, velando siempre por el buen ejercicio de la profesión legal. *In re Pagán*, 116 D.P.R. 107 (1985); *In re Roldán González*, 105 D.P.R. 498 (1976); Criterio General de los Deberes del Abogado en Relación con sus Compañeros y su Profesión, Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX.
>
> Al amparo de este imperativo de civilidad profesional, es evidente que el uso por un abogado de lenguaje soez, de frases mordaces o insinuaciones devalúa la dignidad de su propio ministerio, pone en entredicho su temperamento y le resta fuerza persuasiva a sus argumentos. De más está decir que la grosería jamás debe resonar o hacer eco en el recinto de un tribunal. *De Latorre v. Alcalde de Carolina*, 104 D.P.R. 523 (1976). A fin de cuentas, la estatura moral e intelectual inherente al ejercicio de la abogacía impone un debate jurídico libre de personalismo y posiciones subjetivas que lo degraden a vulgar diatriba. *García Santiago v. Acosta*, 104 D.P.R. 321 (1975); *Deberes del Abogado para con los Tribunales*, Criterio General, Cánones 9 y 29 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. *In re Martínez Texidor*, supra, págs. 916–917.

Esta conducta es también altamente reprochable y debe ser eliminada; más aún cuando dicha conducta irrespetuosa hacia los compañeros supone también un trato distinto por motivo de sus características personales, en este caso el género.

Debemos en estos momentos hacer una aclaración. Aunque no deseamos enjuiciar la conducta del licenciado Valcárcel Mulero desde la perspectiva de su alegado machismo, sí queremos dejar constancia que conducta como la exhibida por él respecto a sus expresiones hacia la Fiscal Cruz Vélez como "gallina loca", su referencia a ella como "niña empezando", aunque fuese en tono de negación, mientras se refería a los otros abogados en la Sala, en el mismo sentido, como "abogados jóvenes", su alusión a la Fiscal como "Paulita" en el curso de la argumentación ante el tribunal y el aumento en el tono de la voz al argumentar, se han reconocido como instancias que reflejan los estereotipos que propician el trato discriminatorio en los tribunales.(7) Situaciones como ésta han preocupado profundamente a este Tribunal. Conscientes de la trascendencia de esta situación en nuestra sociedad y de las nefastas repercusiones que provoca, se creó la Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico (en adelante la Comisión). La Comisión llevó a cabo una extensa investigación, después de la cual preparó un informe sobre sus hallazgos. Particularmente, en cuanto a la situación que presenta el caso ante nuestra consideración, la Comisión expresó lo siguiente: "Las concepciones estereotipadas relativas al género pueden surgir en cualquier momento en el trato cotidiano de

---

(7) Dentro del marco de los sucesos acontecidos en el caso ante nos, resulta también estereotipado y nocivo pedir disculpas sólo a las mujeres que estén presentes en la Sala durante el juicio, antes de repetir como parte de un interrogatorio palabras soeces alegadamente dichas por un testigo anterior. En el presente caso, el licenciado Valcárcel Mulero incurrió en este tipo de conducta en más de una ocasión. Véase, por ejemplo, Caso Núm. CP-95-1, Segunda Parte, Transcripción de Evidencia de 4 y 5 de octubre de 1993, págs. 160 y 172.

las personas, en forma explícita o solapada, en las expresiones, discursos y prácticas sociales, entretejiéndose incluso con discursos que contradicen los estereotipos." Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico, San Juan, Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, Tribunal Supremo de Puerto Rico, 1995, pág. 112. Más adelante expresa la Comisión:

> Por lo que respecta a los efectos negativos de dichos estereotipos en los centros de trabajo, se han investigado, entre otras cosas, las formas diferentes de reaccionar de hombres y mujeres en la interacción cotidiana. Los estereotipos imponen cargas a unos y a otras, a la vez que promueven el doble estándar en la valoración de las conductas de hombres y mujeres. Existe un cúmulo de evidencia sobre el desarrollo emocional de los hombres que demuestra que a los hombres jóvenes no se les permite en nuestra sociedad expresar su coraje directa e inmediatamente en formas positivas que posibilitan la interacción y la respuesta solidaria de los demás. Por el contrario, lo que se estimula ante el sentimiento de coraje es la reacción agresiva cónsona con los esquemas de fuerza y poder que se supone deben caracterizar al hombre. El hombre que actúa así lo hace dentro de los parámetros socialmente establecidos de la masculinidad. Si una mujer lo hiciera, la cosa sería distinta, pues estaría contraviniendo lo que socialmente se espera de ella. De allí los calificativos distintos que se suelen usar en uno y otro caso. Un hombre que expresa su coraje se considera, por ejemplo, asertivo. Si se trata de una mujer, se dice que es agresiva y fuerte, adjetivos que en este caso adquieren carga negativa. (Escolios omitidos.) Íd., pág. 113.

Claramente, la situación suscitada y relatada respecto al caso ante nos se adecúa cabalmente a la problemática descrita por la Comisión en su Informe. Dicha conducta es altamente reprochable y debe ser totalmente eliminada de nuestras salas de justicia. Las reseñadas expresiones del licenciado Valcárcel Mulero son lesivas a la integridad institucional de nuestro sistema de justicia, al igual que suponen una afrenta a la integridad individual de la funcionaria a quien iban dirigidas. Al así actuar se excedió.

El licenciado Valcárcel Mulero se ha expresado sobre la forma en que la Juez Ygrí Rivera de Martínez condujo los procedimientos en el caso de autos a manera de explicar su comportamiento en Sala. Según el licenciado Valcárcel Mulero consignó para el récord, él no se sintió "complacido" o "satisfecho" con la forma en que la juez condujo los procedimientos. Caso Núm. CP-95-1, Tercera Parte, Transcripción de Evidencia, págs. 63 y 64. A igual planteamiento recurre el licenciado Valcárcel Mulero en la Contestación a la Querella.

Un examen desapasionado y objetivo del récord del caso sencillamente no sostiene tales imputaciones o justificaciones. La distinguida juez que presidió el proceso fue sumamente tolerante y condescendiente con los abogados defensores. Trató por todos los medios posibles de conducir los procedimientos de forma justa y ordenada. Basta tan sólo observar la cantidad de objeciones y solicitudes formuladas por la defensa que en efecto fueron acogidas favorablemente por la juez, así como las diversas determinaciones judiciales tomadas en beneficio de la defensa, para establecer convincentemente su imparcialidad durante el curso de los procedimientos.[8]

Igualmente infundado es el planteamiento respecto a los regaños que alegadamente profería la juez continuamente contra los abogados defensores frente al Jurado. Del récord se desprende que dichos "regaños", si es que en efecto se pudieran denominar como tales, se suscitaban a consecuencia o por motivo de la conducta de los abogados frente al Jurado, quienes no seguían la determinación tomada previamente por la juez de que se discutieran las objeciones en el estrado. T.E. de 6 de octubre de 1993, págs.

---

[8] A esos extremos, véanse, entre otras, las porciones del récord siguientes: T.E. de 4 de octubre de 1993, pág. 27; T.E. de 5 de octubre de 1993, págs. 41, 58, 60, 69, 90, 98, 127, 155; T.E. de 6 de octubre de 1993, págs. 20, 27, 29, 48–49, 56, 74–75, 94, 121, 127, 161; T.E. de 7 de octubre de 1993, págs. 9, 13, 58, 64, 123, 142; T.E. de 8 de octubre de 1993, págs. 32, 55, 64, 70, 72 y 78; T.E. de 11 de octubre de 1993, págs. 20, 27, 61, 64, 103, 131, 153, 160 y 162.

137–138. En esas circunstancias, la Juez entendía que ella debía intervenir para poner las cosas en perspectiva frente al Jurado.

■ De todos modos, cualquier expresión de la juez o actuación en que hubiese incurrido ésta en el curso de los procedimientos, que a juicio de los abogados defensores resultara perjudicial a la causa de su representado, podía y debía ser señalada por éstos, con vehemencia y firmeza si se quiere, pero fundamentada y respetuosamente, a fin de solicitar el remedio apropiado. *In re Cardona Álvarez*, supra, pág. 905; *In re Andréu Ribas*, supra, pág. 119. Y si ello no resultara suficiente en esa etapa, tenían disponible, además, el foro apelativo, ante el cual podían reproducir el planteamiento, a tenor con las constancias en el récord, para la acción correctiva que procediera en derecho. *Pueblo v. Susoni*, 81 D.P.R. 124, 154 (1959).

De lo anterior se deduce indiscutiblemente que el licenciado Valcárel Mulero incurrió efectivamente en las violaciones del Código de Ética Profesional que le fueron imputadas. Hemos analizado el expediente personal del abogado y del mismo surge que, aparte de la querella que es objeto de la presente opinión, en ningún otro momento el licenciado Valcárcel Mulero ha sido objeto de procedimiento disciplinario alguno. Esto sirve como un atenuante al momento de disponer la sanción que habremos de dispensar. En igual sentido consideramos las expresiones detalladas por el licenciado Valcárcel Mulero respecto a su trayectoria dentro y fuera del ejercicio de la profesión.

Por otro lado, parte de la conducta exhibida por el licenciado Valcárcel Mulero, analizada en su totalidad, refleja un problema latente en nuestra sociedad, cuyos efectos son muy dañinos y en extremo nocivos, tanto dentro como fuera de los tribunales. Es una conducta que afecta de forma sustancial la función de impartir justicia. Esto hace imperativo que, aún cuando se presenta ante nuestra consideración por primera vez, actuemos enérgicamente para

erradicarla total y efectivamente de nuestro sistema de justicia.([9])

En consideración a todo lo anterior, *se dictará sentencia separando al licenciado Francisco Valcárcel Mulero del ejercicio de la profesión legal durante un término de tres (3) meses y hasta que otra cosa disponga este Tribunal. Después de transcurrido dicho término, podrá solicitar su reinstalación. Se ordena, además, la incautación de su obra notarial, protocolos y registro de affidávit.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.

---

([9]) Tampoco consideramos las expresiones del licenciado Valcárcel Mulero como representativas de un sincero arrepentimiento. Al efecto se expresó el licenciado Valcárcel Mulero: "Antes de proseguir, el Lcdo. Valcárcel Mulero desea hacer constar y consignar —con relación al incidente que motivó la presente querella— su expresión de formal arrepentimiento por cualquier manifestación, gesto o actuación que en forma alguna pudiera haber ofendido la sensibilidad y dignidad del Tribunal, siendo firme su compromiso de no repetir dichas actuaciones en el futuro." Caso Núm. CP-95-1, Primera Parte, Querella, pág. 3.